**William VERMILLION, Plaintiff,**

**v.**

**Alex SPOTTED ELK and Benny Dogskin, Defendants.**

**No. 7664.**

Supreme Court of North Dakota.

Oct. 14, 1957.

Leslie R. Burgum, Atty. Gen., Frank J. Kosanda, Asst. Atty. Gen., Bismarck, for defendants.

Strutz, Jansonius & Fleck, Bismarck, for plaintiff.

SATHRE, Justice.

This case comes to this court for determination of a certified question of law from the district court of Burleigh County, pursuant to provisions of Chapter 32—24, NDRC 1943. The complaint alleges that defendants negligently and carelessly operated their automobile on State Highway number 21 within the Standing Rock Indian Reservation, and through their negligence and carelessness collided with the plaintiff's automobile causing personal injuries to plaintiff and damaging his said automobile.

The defendants in their answer admitted that there was a collision as alleged by the plaintiff but as a defense alleged that the district court had no jurisdiction to hear and determine a civil cause of action arising out of tort for the reason that the parties to the action were enrolled Indians, residing within the boundaries of the Standing Rock Indian Reservation in the State of North Dakota.

There is no dispute as to the facts in this case. The plaintiff and the two defendants are enrolled Indians residing on the Standing Rock Indian Reservation. The collision out of which said action arose occurred on State Highway No. 21 in Sioux County, North Dakota, within the said Indian Reservation.

The case came on for trial in the District Court of Burleigh County before the Hon. C. L. Foster, one of the judges of said district court. Under the pleadings the sole question presented for determination was a question of law, that is, whether or not the district court had jurisdiction to determine a civil cause of action arising in tort between enrolled Indians residing within the boundaries of an Indian Reservation where the cause of action arose within said reservation. The district court answered the said question in the affirmative and held that the district courts of the state have jurisdiction in such case. It held, however, that the proper answer to said question was in doubt; that it was of vital importance and that the proper determination thereof will depend wholly on the construction of the law applicable thereto and that the said question is of great moment and of public importance.

The Attorney General of the State appeared for the defendants under the provisions of the unsatisfied judgment fund law of the State and contended that

the district court was in error in holding that it had jurisdiction to try the case. The trial court thereupon certified the question to this court which question is as follows:

"Does the district court of the State of North Dakota have jurisdiction to hear and determine a civil cause of action arising in tort between enrolled Indians where the cause of action is for personal injuries arising out of an automobile accident on State Highway No. 21, in Sioux County, North Dakota, about 7 miles east of the Village of Solen the scene of said accident being located within the boundaries of the Standing Rock Indian Reservation."

The Attorney General cites the provisions of Section 4 of the Enabling Act under which North Dakota was admitted into the Union and Section 203 of the Constitution. The portion of the Enabling Act cited reads as follows:

"That the people inhabiting said proposed states do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indian or Indian tribes; and that until the title thereto shall have been extinguished by the United States, the same shall be and remain subject to the disposition of the United States, and said Indian lands shall remain under the absolute jurisdiction and control of the congress of the United States;"

Article XVI of the Constitution, Compact with the United States, is as follows:

"The following article shall be irrevocable without the consent of the United States and the people of this state:

"Section 203. First. * * *

"Second. The people inhabiting this state do agree and declare that they forever disclaim all right and title to the unappropriated public lands lying within the boundaries thereof, and to all lands lying within said limits owned or held by any Indians or Indian Tribes, and that until the title thereto shall have been extinguished by the United States, and the same shall be and remain subject to the disposition of the United States, and that said Indian Lands shall remain under the absolute jurisdiction and control of the congress of the United States;"

The attorney general asserts that under the provisions of the Enabling Act and Section 203 of the Constitution quoted above the United States had jurisdiction not only over the Indian lands but also over civil causes of action between the enrolled Indians residing thereon; that such jurisdiction continues in effect until the United States has relinquished its jurisdiction and the people of the State have accepted jurisdiction by appropriate legislative action. In support of this contention is cited the Act of Congress of the United States enacted August 15, 1953. Public Law No. 280, Chapter 505, United States Statute at Large Volume 67, pages 589, 590. Sections 4, 6, and 7 of said Act are as follows:

"Sec. 4, Title 28, United States Code, is hereby amended by inserting in chapter 85 thereof immediately after section 1359 a new section, to be designated as section 1360, as follows:

"§ 1360. State civil jurisdiction in actions to which Indians are parties

"(a) Each of the States listed in the following table shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country listed opposite the name of the State to the same extent that such State had jurisdiction over other civil causes of action, and those civil laws

of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State:

"State of
Indian country affected

California .............All Indian country within the State

Minnesota .............All Indian country within the State, except the Red Lake Reservation

Nebraska ..............All Indian country within the State

Oregon ................All Indian country within the State, except the Warm Springs Reservation

Wisconsin .............All Indian country within the State, except Menominee Reservation. * * *

"Sec. 5. * * *

"Sec. 6. Notwithstanding the provisions of any Enabling Act for the admission of a State, the consent of the United States is hereby given to the people of any State to amend, where necessary, their State constitution or existing statutes, as the case may be, to remove any legal impediment to the assumption of civil and criminal jurisdiction in accordance with the provisions of this Act: Provided, That the provisions of this Act shall not become effective with respect to such assumption of jurisdiction by any such State until the people thereof have appropriately amended their State constitution or statutes as the case may be.

"Sec. 7. The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State of assumption thereof. Approved August 15, 1953."

It is argued that while under Sections 6 and 7 of the Federal Statute quoted the United States gave its consent to any State to assume civil and criminal jurisdiction over enrolled Indians residing within Indian Reservations, the State of North Dakota has not such jurisdiction since the people of the State have not consented thereto by appropriate legislative enactment.

The attorney general cites also State v. Kuntz, N.D., 66 N.W.2d 531, and State v. Lohnes, N.D., 69 N.W.2d 508. However, these cases involved crimes committed on Indian reservations by or against Indians. The defendants in both cases were convicted in the state district courts. They appealed challenging the jurisdiction of the state courts on the ground that the crimes were committed against Indians who were residents on Indian reservations. We held in both cases that the district courts were without jurisdiction. In the Lohnes case reference was had to the Act of Congress of May 31, 1946, 60 U. S. Statutes at Large, page 229 which confers concurrent jurisdiction on the State of North Dakota over offenses committed by or against Indians on the Devils Lake Indian Reservation. In that case this court held that notwithstanding the Act of Congress of May 1946 the state courts did not have jurisdiction because the people of the state had not consented by appropriate legislative enactment to assume jurisdiction as required by the Enabling Act and the State Constitution. By the Act of Congress of August, 1953 the United States gave its consent to any state not having jurisdiction in civil causes of action to exercise such jurisdiction. The Act can have no application in states where the courts have

exercised such jurisdiction under their constitutions and laws without adverse appearance by the United States. We do not believe that the Enabling Act and the disclaimer in Section 203 of the State Constitution can be held to have reserved to the United States jurisdiction in civil actions between Indians on Indian reservations within the State not involving Indian lands.

The Attorney General argues that since under the decisions in the Kuntz and Lohnes cases, supra, it is settled law that the courts of this state do not have jurisdiction in criminal cases involving Indians on Indian Reservations, it necessarily follows that the state courts are without jurisdiction in civil cases, until the people of the state have consented thereto by appropriate legislation. We do not believe that the decisions in the Kuntz and Lohnes cases, supra, warrant such a broad application. The enrolled Indians on the Standing Rock Reservation are citizens of the United States and residents of the State of North Dakota. In 27 Am.Jur. Indians, Sec. 21, page 554, it is stated:

"Since the grant of United States citizenship to Indians born within the territorial limits of the United States, it would seem that Indians, as citizens, have the right to prosecute and defend actions in any proper court, either Federal or State. In fact their right to maintain actions in Federal Courts is not only a reasonable, but almost a necessary, inference to be derived from early Federal cases, holding that Indians who are not citizens of the United States cannot maintain actions in Federal Courts and from other such cases permitting Indians, in many instances, so to do, no reference being made as to the question of citizenship.

"It has, furthermore, been almost uniformly held that Indians may sue or be sued in state courts, since the latter are generally open to all persons irrespective of race, color, or citizenship, and the fact that their lands are not liable to levy and sale under a judgment is not grounds for refusing a judgment against them. In bringing a suit in a state court, an Indian is subject to the same laws relating to the prosecution of suits which govern any citizen of the state, including the statute of limitations.

"It has been held that an Indian may assign his right of action to a white man."

And in 42 C.J.S. Indians § 8, page 653:

"As a general rule, sometimes by reason of express statute, an Indian may sue in a state or territorial court the same as all other persons, irrespective of race or color, at least with respect to any matter over which congress has not expressly retained jurisdiction in the United States, particularly if the Indian is a citizen. If the right of an Indian to sue in a state court is conferred by statute, an action brought thereunder must satisfy its terms and conditions."

In the case of Holden v. Lynn, 30 Okl. 663, 120 P. 246, 38 L.R.A.,N.S., 239 it was held that the state courts have jurisdiction in an action by an Indian ward of the government to recover the reasonable value of the use of lands as mesne profits against one holding a lease on allotted land which was void for want of approval by the superintendent of the Indian agency or the proper United States Official.

In the case of Smith v. Northern Pac. Ry. Co., 57 Mont. 14, 186 P. 684, 686, the Supreme Court of Montana said:

"It has been repeatedly held that by virtue of the act of February 8, 1887, supra, (24 Statute at Large, 390, 25 U.S.C.A. § 349) Indians who have severed their tribal relations and taken allotments are citizens and entitled to institute or defend actions of ejectment or trespass in state or federal courts, regardless of prohibition

against the alienation of the lands obtained under their allotment."

In the case of Trujillo v. Prince, 42 N.M. 337, 78 P.2d 145, 153, the Supreme Court of New Mexico held that a New Mexico probate court had jurisdiction to appoint an administrator for a deceased reservation Indian to enforce the right of action under the Wrongful Death Statute of the state. We quote from the opinion.

"And in the case at bar we are unable to discover in the acts of Congress which have for their object the regulation of Indians' affairs and exercising a control of Indian reservations and the property granted by Congress to Indians anything which militates against the power of the state to confer a right upon an Indian arising from our Death by Wrongful Act Statute."

In a recent Montana case, Bonnet v. Seekins, 126 Mont. 247, 243 P.2d 317 the plaintiff an Indian of the Blackfeet Tribe, brought an action in district court to recover $1,500 from the defendant as rental alleged to be due under the terms of a written lease, and the additional sum of $1,965 as damages alleged to have been sustained because of damage to the property covered by the lease. Defendant admitted the execution of the lease, but contended that the state court was without jurisdiction since the land involved in the lease was trust patented land. The Supreme Court of Montana held that the state court had jurisdiction. Montana and North Dakota were admitted into the Union under the same Enabling Act, and the Constitution of Montana, Ordinance No. 1, § 2, has the identical disclaimer contained in Section 203 of the Constitution of North Dakota.

The disclaimer in Section 203 of the Consitution was a condition imposed upon the State by the Enabling Act for the purpose of safeguarding the interests of the Indian in their allotments of lands within the reservations. In reserving jurisdiction and control of such lands, we do not believe it was the intent of Congress to reserve jurisdiction over civil rights of Indians which do not grow out of or have any relation to Indian lands.

In the case of Mars v. McDougal, 10 Cir., 40 F.2d 247, 249, the facts show that Lusanna Brink, a full-blood Creek Indian, by her guardian, brought action in the district court of Creek County, Oklahoma, against the defendants to set aside certain deeds she had executed to them, alleging mental incapacity, inadequacy of consideration and fraud. The district court rendered judgment in favor of the plaintiff. Thereafter the United States as guardian for Lusanna Brink and others brought action in United States District Court, Eastern District of Oklahoma against the grantees of Lusanna Brink to set aside the deeds executed to them. At the trial, upon the motion of the United States, the action was dismissed with prejudice. An appeal was taken to the Circuit Court of Appeals, Tenth Circuit. The Circuit Court affirmed the decision of the District Court and held that the decision of the state court was binding upon the Indians. We. quote from the opinion:

"The Oklahoma court had jurisdiction of the parties and of the subject matter and, having jurisdiction, its decree whether right or wrong, is valid and binding and is res adjudicata until set aside by proper proceedings. Swift v. Jackson, 10 Cir., 37 F. 237; Gordon v. Ware Nat. Bank, 8 Cir., 132 F. 444, 449, 67 L.R.A. 550. The fact that Lusanna Brink was a full blood Creek Indian does not alter the situation. Under section 6, art. 2, of the Constitution of Oklahoma, Lusanna Brink was authorized to sue in the district court of Creek County to establish her interest in such allotment. When she availed herself of that privilege and submitted herself and her cause to the jurisdiction of that court, she became bound by the decree entered therein the same as any other person."

Section 6 of Article II of the Constitution of State of Oklahoma reads as follows:

"The courts of justice of the State shall be open to every person, and speedy and certain remedy afforded for every wrong and for every injury to person, property, or reputation; and right and justice shall be administered without sale, denial, delay, or prejudice."

Sec. 22, Article I, Constitution of North Dakota is of similar import and is as follows:

"All courts shall be open, and every man for any injury done him in his lands, goods, person or reputation shall have remedy by due process of law, and right and justice administered without sale, denial or delay. Suits may be brought against the state in such manner, in such courts, and in such cases, as the legislative assembly may, by law, direct."

Sec. 6, Article III of the Constitution of Montana likewise provides that:

"Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property, or character; and that right and justice shall be administered without sale, denial, or delay."

The Enabling Acts and the Constitutions of the States of Montana, Oklahoma and New Mexico have the identical provisions contained in Section 4 of the Enabling Act for North Dakota and in Section 203 of the Constitution.

Notwithstanding the provisions in the Enabling Acts and disclaimers in the Constitutions of the said states, their courts assumed and exercised jurisdiction in civil cases between enrolled Indians residing on reservations within the boundaries of said states, without intervention by the United States.

The case at bar grew out of tort, committed on an Indian reservation and was brought by an Indian against Indians.

 They are citizens of the United States and residents of the State of North Dakota. Under Section 22 of the Constitution the courts of the State are open to them. The compact between the United States and the State of North Dakota created by the Enabling Act and the disclaimer in Section 203 of the Constitution, have reference to Indian lands. The provisions of the compact cannot be held to be a reservation by the United States of jurisdiction in civil cases not involving lands, between Indians residing on Indian reservations.

The district court having answered the certified question in the affirmative we conclude that the answer was correct.

GRIMSON, C. J., and MORRIS, BURKE and JOHNSON, JJ., concur.