**McKENZIE COUNTY SOCIAL SERVICES BOARD, S.N.F. Through Michon Sax as Guardian Ad Litem, and C.F., Petitioners and Appellees,**

v.

**V.G., Respondent and Appellant.**

**Civ. No. 11153.**

Supreme Court of North Dakota.

Aug. 20, 1986.

Anseth & Zander, Williston, for petitioners and appellees; argued by Janet Holter Zander.

Vance R. Gillette, Garrison, for respondent and appellant.

MESCHKE, Justice.

V.G. appeals from an order of the district court of McKenzie County determining that he is the father of S.N.F. and from an order denying his motion to vacate. We reverse and remand.

On November 25, 1970, S.N.F. was born out of wedlock to C.F. They received public assistance from the McKenzie County Social Service Board between 1977 and 1984. In 1985, McKenzie County, S.N.F. through Michon Sax as Guardian Ad Litem,

---

and C.F. petitioned to establish that V.G. was the father of S.N.F. Petitioners sought $200 per month child support as well as $10,362.11 for past support provided by McKenzie County.

V.G. moved to dismiss the petition on the ground that the district court of McKenzie County lacked subject matter jurisdiction to hear and determine it. V.G. submitted a supporting affidavit denying that he was the father of S.N.F. and asserting that: 1) he is an enrolled member of the Three Affiliated Tribes of the Fort Berthold Indian Reservation; 2) C.F. and S.N.F. are enrolled members of the Three Affiliated Tribes residing on the Fort Berthold Indian Reservation; 3) "[t]he events and alleged paternity arose from the Fort Berthold Indian Reservation;" and 4) Three Affiliated Tribes had a tribal court with jurisdiction "to deal with reservation events and tribal members." The district court denied V.G.'s motion.

Pursuant to Section 14–17–09, N.D.C.C., the petitioners thereafter scheduled a pretrial informal hearing for September 30, 1985, and served V.G. with a notice of that hearing on August 22, 1985. V.G. subsequently filed motions for reconsideration and for continuance which the district court denied. The district court's order denying continuance stated that the September 30, 1985 hearing was "an informal hearing" pursuant to Section 14–17–09, N.D.C.C., and there would be ample time for discovery and preparation if a trial was necessary.

At the hearing on September 30, 1985, the district court heard testimony about paternity and the public assistance provided by McKenzie County. V.G. did not appear or present evidence at the hearing. Thereafter, the district court made its recommendations[1] which included a determination that V.G. was the father of S.N.F. The district court's order provided that the recommendations would become final unless V.G. showed good cause within 30 days after service of the order. V.G. responded with a motion to vacate and an answer. In his answer V.G. again denied he was the father of S.N.F. The district court denied V.G.'s motion, and he has appealed from the order making the recommendations final and from the order denying his motion to vacate.

V.G. contends that the state court lacks subject matter jurisdiction to hear and de-

---

1. Pre-trial recommendations are required in Section 14–17–12, N.D.C.C., which provides, in relevant part:

"1. On the basis of the information produced at the pretrial hearing, the judge or referee conducting the hearing shall evaluate the probability of determining the existence or nonexistence of the father and child relationship in a trial and whether a judicial declaration of the relationship would be in the best interest of the child. On the basis of the evaluation, an appropriate recommendation for settlement shall be made to the parties, which may include any of the following:

"a. That the action be dismissed with or without prejudice.

"b. That the matter be compromised by an agreement among the alleged father, the mother, and the child, in which the father and child relationship is not determined but in which a defined economic obligation is undertaken by the alleged father in favor of the child and, if appropriate, in favor of the mother, subject to approval by the judge or referee conducting the hearing. In reviewing the obligation undertaken by the alleged father in a compromise agreement, the judge or referee conducting the hearing shall consider the best interest of the child, in the light of the factors enumerated in subsection 5 of section 14–17–14, discounted by the improbability, as it appears to him, of establishing the alleged father's paternity or nonpaternity of the child in a trial of the action. In the best interest of the child, the court may order that the alleged father's identity be kept confidential. In that case, the court may designate a person or agency to receive from the alleged father and disburse on behalf of the child all amounts paid by the alleged father in fulfillment of obligations imposed on him.

"c. That the alleged father voluntarily acknowledge his paternity of the child.

"2. If the parties accept a recommendation made in accordance with subsection 1, judgment shall be entered accordingly.

"3. If a party refuses to accept a recommendation made under subsection 1 and blood tests have not been taken, the court shall require the parties to submit to blood tests, if practicable. Thereafter the judge or referee shall make an appropriate final recommendation. If a party refuses to accept the final recommendation, the action shall be set for trial."

termine the petition because it is between Indians [2] and involves a claim arising on an Indian reservation. We agree.

The "somewhat erratic" history of Indian jurisdiction in North Dakota was recently chronicled in *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C., (Three Tribes I)*, 467 U.S. 138, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984), and *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C., (Three Tribes II)*, 476 U.S. ——, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986).

In *Three Tribes II, supra*, 476 U.S. at ——, 90 L.Ed.2d at 889, 106 S.Ct. at 2309, the United States Supreme Court outlined the following analysis of Indian jurisdiction:

"Our cases reveal a ' "trend ... away from the idea of inherent Indian sovereignty as a[n independent] bar to state jurisdiction and toward reliance on federal preemption." ' ... Yet considerations of tribal sovereignty, and the federal interests in promoting Indian self-governance and autonomy, if not of themselves sufficient to 'pre-empt' state regulation, nevertheless form an important backdrop against which the applicable treaties and federal statutes must be read.... Accordingly, we have formulated a comprehensive pre-emption inquiry in the Indian law context which examines not only the congressional plan, but also 'the nature of the state,

federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law.' " [Citations omitted.]

In *Three Tribes II, supra*, the United States Supreme Court held that Public Law 280 (28 U.S.C.S. § 1360) pre-empted Chapter 27–19, N.D.C.C., ["Indian Civil Jurisdiction"] insofar as that chapter disclaimed jurisdiction over actions by tribal plaintiffs against non-Indian defendants for which there was no other forum.[3] Thus, our Legislature was pre-empted from disclaiming that part of the jurisdiction that had been previously exercised in *Vermillion v. Spotted Elk*, 85 N.W.2d 432 (N.D.1957).

In *Vermillion v. Spotted Elk, supra*, we held that state civil jurisdiction over Indian Country was foreclosed only in cases involving Indian land, and therefore our state courts had jurisdiction over actions between Indian plaintiffs and Indian defendants for torts committed on an Indian reservation.

In *Three Tribes I, supra*, 467 U.S. at 147–148, 104 S.Ct. at 2273–2274, the United States Supreme Court recognized the "expansive" view of state court jurisdiction over Indian country taken in *Vermillion v. Spotted Elk, supra*, and limited that decision:

" ... [A] particular exercise of state authority may be foreclosed because it

---

**2.** While McKenzie County is a non-Indian, its only apparent interest in the matter is through an assignment from the Indian mother of the child of "all rights to support from any other person she may have on her own behalf or on the behalf of the minor child." Generally, an assignee of a debt has no greater rights against a debtor than the assignor had. *First National Bank of Minot v. MacDonald Const. Co.*, 137 N.W.2d 667, 672 (N.D.1965).

**3.** Pursuant to Public Law 280, in 1958 the North Dakota Constitution was amended to authorize the Legislature to provide for the acceptance of jurisdiction over Indian Country; *see* N.D. Const., Art. XIII, § 1(2). In 1963, the Legislature enacted Chapter 27–19, N.D.C.C. Section 27–19–01, N.D.C.C., provides:

"*27–19–01. Assumption of jurisdiction.* In accordance with the provisions of Public Law

83–280 and section 1 of article XI (sic) of the Constitution of North Dakota, jurisdiction of the state of North Dakota shall be extended over all civil claims for relief which arise on an Indian reservation upon acceptance by Indian citizens in a manner provided by this chapter. Upon acceptance the jurisdiction of the state is to the same extent that the state has jurisdiction over other civil claims for relief, and those civil laws of this state that are of general application to private property have the same force and effect within such Indian reservation or Indian country as they have elsewhere within this state."

We interpreted this provision to completely disclaim the state jurisdiction recognized in *Vermillion v. Spotted Elk, supra.* *See e.g., In re Whiteshield*, 124 N.W.2d 694 (N.D.1963).

would undermine ' "the right of reservation Indians to make their own laws and be ruled by them." ' . . . Second, state authority may be pre-empted by incompatible federal law. . . . [T]he full breadth of state-court jurisdiction recognized in *Vermillion* cannot be squared with principles of tribal autonomy; to the extent that *Vermillion* permitted North Dakota state courts to exercise jurisdiction over claims by non-Indians against Indians or over claims between Indians, it intruded impermissibly on tribal self-governance. . . ." [Citations omitted.]

*Three Tribes II, supra,* teaches that the federal legislative plan embodied in Public Law 280 pre-empted disclaimer by North Dakota of one part of the jurisdiction previously extended in *Vermillion v. Spotted Elk, supra,* specifically: actions by Indian plaintiffs against non-Indian defendants for which there was no other forum. However, nothing in *Three Tribes II, supra,* suggests that Chapter 27–19, N.D.C.C., was pre-empted insofar as that chapter requires consent for jurisdiction in a case between Indians for conduct on the reservation. If there is an available forum in the tribal court, considerations of tribal sovereignty and the federal interest in promoting Indian self-governance and autonomy arise. *See Three Tribes II, supra; Three Tribes I, supra.*

This case is between enrolled members of Three Affiliated Tribes to determine the paternity of an Indian child living with her mother on the Indian reservation. V.G. denied paternity but, alternatively, alleged that "the events and alleged paternity" occurred on the reservation. There is nothing in this record to contradict the allegation that "paternity" occurred on the reservation. Three Affiliated Tribes has not consented to the exercise of state court jurisdiction.

We believe that the determination of the parentage of a child of Indian tribal members is a matter that is intimately connected with " ' " "the right of reservation Indians to make their own laws and be ruled by them." ' " *Williams v. Lee,* 358 U.S. 217,

220, 79 S.Ct. 269, 270, 3 L.Ed.2d 251 (1959), quoted in *Three Tribes I, supra,* 467 U.S. at 147, 104 S.Ct. at 2273; *see Fisher v. District Court,* 424 U.S. 382, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976) [Montana state-court jurisdiction over adoption proceeding would interfere with tribal powers of self-government]. "[T]o allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Williams v. Lee, supra,* 358 U.S. at 223, 79 S.Ct. at 272, 3 L.Ed.2d at 255. Although a statute of limitations may conceivably bar the tribal remedy,[4] we observe that the tribal court was available to the petitioners unlike the situation in *Three Tribes II, supra.*

The petitioners assert that significant events within the state but outside of the reservation gave the district court jurisdiction. The petitioners rely on the facts that C.F. successfully applied for public assistance with McKenzie County outside of the reservation boundaries and that, at times, V.G. has resided off the reservation. We believe that these matters are insufficient to permit state court jurisdiction to hear and determine a claim between Indians for conduct on the reservation. As we have explained, the exercise of such jurisdiction would undermine the authority of the tribal courts over reservation affairs and thereby infringe on the right of the Indians to govern themselves. *Williams v. Lee, supra,* 358 U.S. at 223, 79 S.Ct. at 272.

We therefore conclude that the district court erred in determining that it had jurisdiction to hear and determine this petition. Because this conclusion is dispositive, we need not determine whether the district court erred in entering a final order based on a pretrial recommendation that was not accepted.

Accordingly, we reverse the district court order and remand with instructions to dismiss the petition.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ.

---

**4.** *Compare Matter of Kary,* 376 N.W.2d 320, 322, fn. 3 (N.D.1985).