2001 ND 151

**McKENZIE COUNTY SOCIAL SERVICE BOARD, Plaintiff and Appellant,**

**J.C.Y.B., by and through Michon C. Sax as Guardian ad Litem, and F.H., Plaintiffs,**

**v.**

**C.G., Defendant and Appellee.**

**No. 20010047.**

Supreme Court of North Dakota.

Aug. 29, 2001.

Charles M. Carvell (argued), Assistant Attorney General, Attorney General's Office, Bismarck, ND, and James C. Fleming, Assistant Attorney General, Attorney General's Office, Bismarck, ND, for plaintiff and appellant.

James P. Fitzsimmons (argued) and Edward B. Reinhardt, Jr., North Dakota Legal Services, New Town, ND, for defendant and appellee.

Gary M. Beaudry, Three Affiliated Tribes, New Town, ND, for amicus curiae.

SANDSTROM, Justice.

[¶ 1] McKenzie County Social Service Board ("the Board") appealed a December 18, 2000, memorandum and order directing it to return $5,611.19 collected from C.G. under a 1991 paternity and child support judgment. We affirm the order to the extent it denied the Board's motion to reconsider the court's decision the 1991 judgment was void for lack of jurisdiction, and we reverse the payment order.

I

[¶ 2] J.C.Y.B was born in 1987. When J.C.Y.B. was conceived on the Fort Berthold Indian Reservation, his mother and C.G. were members of the Three Affiliated Tribes and were living on the reservation. C.G. moved to Nevada about two years after J.C.Y.B was born.

[¶ 3] In 1990, J.C.Y.B.'s mother applied for and received public assistance from the Board. In 1991, the mother and the Board sued C.G. in state court to establish paternity, fix his child support obligation, and recover past public assistance paid for J.C.Y.B.'s benefit. Although he was properly served with process, C.G. did not appear in the action or challenge the court's jurisdiction. The district court entered a default judgment in 1991, adjudging C.G. to be the father of J.C.Y.B., ordering C.G. to pay child support of $175 per month, and giving the Board a judgment against C.G. for $1,042.25 in support it had disbursed on behalf of J.C.Y.B., to be paid at a minimum rate of $50 per month. The Board collected sums from C.G. in 1991, 1992, 1993, and 1997.

[¶ 4] In 1999, C.G. moved to set aside the 1991 judgment and for a return of funds paid under it, asserting the district court lacked personal jurisdiction over him and lacked "subject matter jurisdiction over this paternity action, as the parties are all enrolled members of the Three Affiliated Tribes and the alleged conception of the child took place within the exterior boundaries of the Fort Berthold Indian Reservation." While C.G. did not so denominate it, the district court treated his motion as one for relief from a final judgment under N.D.R.Civ.P. 60(b)(iv), which provides for relief from a final judgment "for the following reasons: ... the judgment is void."

[¶ 5] On March 7, 2000, the district court issued an order denying C.G.'s motion to set aside the 1991 judgment. C.G. moved for reconsideration. In an order issued August 1, 2000, the district court concluded "the McKenzie County District Court did *not* have subject matter jurisdiction to hear and decide this paternity/child

support case——and, accordingly, the judgment entered by the Court was *void* from its inception," and concluded laches does not bar vacating a void judgment under N.D.R.Civ.P. 60(b)(iv). The court granted C.G.'s motion to reconsider, granted C.G.'s motion to set aside the 1991 judgment, vacated the 1991 judgment, and ruled C.G. "is entitled to the return of all funds paid out by him pursuant to that judgment." The district court issued findings of fact, conclusions of law, and order for judgment on September 18, 2000. Judgment was entered on September 19, 2000.

[¶ 6] The Board moved for reconsideration and clarification. On December 18, 2000, the district court issued an order denying the motion to reconsider, and as to the motion to clarify, the court ordered the Board "must now return the *entire amount* collected (i.e., $5,611.19) to the Defendant." The Board appealed.

[¶ 7] The Board contends the district court had subject matter jurisdiction in the 1991 proceeding and this Court should reverse the district court's December 18, 2000, order and direct the district court to reinstate the 1991 judgment.

[¶ 8] The district court had jurisdiction to rule on the instant motions under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–01 and 28–27–02.

## II

■ [¶ 9] The Board contends the state district court and the Fort Berthold Tribal Court had concurrent jurisdiction to determine whether C.G. was the father of J.C.Y.B. and the district court erred in determining it lacked jurisdiction over the 1991 paternity action.

■ [¶ 10] "[A] judgment entered without personal or subject matter jurisdiction is void. Rule 60(b)(iv), N.D.R.Civ. P., allows relief from a void judgment." *Eggl v. Fleetguard, Inc.,* 1998 ND 166, ¶ 4, 583 N.W.2d 812 (citation omitted).

Our standard of review for motions under Rule 60(b)(iv) is plenary. A motion under subdivision iv is not left to the court's discretion. The court's task is purely to determine the validity of the judgment. If the judgment is valid, the motion must be denied. If the judgment is void, the court has no discretion to protect it.

*First Western Bank & Trust v. Wickman,* 527 N.W.2d 278, 279 (N.D.1995). *See also Johnson, Johnson, Stokes, Sandberg & Kragness, Ltd. v. Birnbaum,* 555 N.W.2d 583, 585 (N.D.1996); *Eggl,* at ¶ 4.

[¶ 11] *McKenzie County Social Servs. Bd. v. V.G.,* 392 N.W.2d 399 (N.D.1986), was a case "between enrolled members of Three Affiliated Tribes to determine the paternity of an Indian child living with her mother" on the Fort Berthold Indian Reservation. *Id.* at 402. The alleged father, V.G., "at times ... resided off the reservation." *Id.* There was nothing in the record to contradict V.G.'s "allegation that 'paternity' occurred on the reservation." *Id.* The Three Affiliated Tribes had not consented to state court jurisdiction. *Id.* This Court concluded "the district court erred in determining that it had jurisdiction to hear and determine this petition." *Id.* This Court explained:

We believe that the determination of the parentage of a child of Indian tribal members is a matter that is intimately connected with " ' "the right of reservation Indians to make their own laws and be ruled by them." ' " (Citations omitted). "[T]o allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Res-

ervation affairs and hence would infringe on the right of the Indians to govern themselves." *Williams v. Lee, supra,* 358 U.S. at 223, 79 S.Ct. at 272, 3 L.Ed.2d at 255....

The petitioners assert that significant events within the state but outside of the reservation gave the district court jurisdiction. The petitioners rely on the facts that C.F. successfully applied for public assistance with McKenzie County outside of the reservation boundaries and that, at times, V.G. has resided off the reservation. We believe that these matters are insufficient to permit state court jurisdiction to hear and determine a claim between Indians for conduct on the reservation. As we have explained, the exercise of such jurisdiction would undermine the authority of the tribal courts over reservation affairs and thereby infringe on the right of the Indians to govern themselves. *Williams v. Lee, supra,* 358 U.S. at 223, 79 S.Ct. at 272.

*McKenzie County Social Servs. Bd. v. V.G.,* 392 N.W.2d at 402.

[¶ 12] We followed *McKenzie County* in *In re M.L.M.,* 529 N.W.2d 184 (N.D. 1995). A regional child support enforcement unit attempted to distinguish *McKenzie County* because "it involved children born, and not merely conceived, on the reservation." *M.L.M.,* at 185. We rejected that fact as a distinguishing feature. *Id.* The unit also tried to distinguish *McKenzie County* because the mother lived off the reservation for several years and the alleged father was employed outside the reservation. We rejected the distinction:

We do not agree with the Unit that Tara's term of residency off of the reservation and Larry's off-reservation employment are significant enough to overcome the danger that "the exercise of

such jurisdiction would undermine the authority of the tribal courts over reservation affairs and thereby infringe on the right of the Indians to govern themselves."

*M.L.M.,* at 186 (quoting *McKenzie County,* 392 N.W.2d at 402).

[¶ 13] The Board concedes important tribal interests are involved:

The tribe has an interest in self-government. It has an interest in adjudicating issues that involve tribal members. It has an interest in promoting its court system. It has an interest in applying its laws to its members.

The Board asserts important North Dakota interests are involved: "a general interest in promoting its courts and institutions and in applying its laws to all its citizens"; protecting the family unit; determining a child's biological parents; the "welfare and well-being of all the state's children"; and "[i]f North Dakota doesn't comply with Title IV–D the federal government may penalize the state by withholding funds. 42 U.S.C. § 609(a)(8)."

[¶ 14] "To qualify for federal AFDC funds, the State must certify that it will operate a child support enforcement program that conforms with the numerous requirements set forth in Title IV–D of the Social Security Act, 42 U.S.C. §§ 651–669(b) (1994 ed. and Supp. II)." *Blessing v. Freestone,* 520 U.S. 329, 333, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997). McKenzie County acknowledged in its brief: "The [Title IV–D] problem was eventually rectified, in part, by a recent amendment to Title IV–D, 42 U.S.C. § 654(33), eliminating, in effect, the requirement that tribal law comply with all federal law." "[A]ll the tribes in North Dakota" meet the general criteria of recent amendments to Title IV–D and are "eligible for cooperative agreements with the state." B.J. Jones, *In Their Native Lands: The Legal Status*

*of American Indian Children in North Dakota,* 75 N.D. L.Rev. 241, 272 (1999).

[¶ 15] The crux of the decisions in *McKenzie County Social Servs. Bd. v. V.G.,* 392 N.W.2d 399 (N.D.1986), and *In re M.L.M.,* 529 N.W.2d 184 (N.D.1995), is this Court's belief that the determination of the parentage of a child of Indian tribal members is intimately connected with the right of reservation Indians to make their own laws and be ruled by them. *McKenzie County,* 392 N.W.2d at 402. We are not persuaded the asserted state interests are significant enough to outweigh the important tribal interest in tribal determination of the parentage of children of tribal members, or to overcome the danger of undermining the authority of tribal courts over reservation affairs, thereby infringing on the right of Indians to govern themselves.

[¶ 16] The Board urges that this case is distinguishable from *McKenzie County Social Servs. Bd.* and *In re M.L.M.:* "In the present case the defendant was not a reservation resident at the time suit was filed"; "The defendant's residence in *McKenzie County,* on the other hand, wasn't so clearly off the reservation.... It is unknown whether he was living off the reservation when the lawsuit was filed"; "the defendant in *McKenzie County* immediately and vigorously challenged state court jurisdiction.... C.G. waited eight years to raise the issue"; "In *McKenzie County* little effort was made to identify the state's interests. The opinion does not discuss Title IV–D and the state's obligations under it"; "In *M.L.M.* the putative father lived on the reservation"; "And in *M.L.M.* the defendant promptly challenged jurisdiction, Title IV–D isn't discussed, and there is little weighing of the competing interests."

[¶ 17] In *McKenzie County Social Servs. Bd. v. V.G.,* 392 N.W.2d 399, 402 (N.D.1986), this Court held a state district court had no jurisdiction to hear and determine a petition to establish the paternity of an Indian child, explaining: (1) the case was "between enrolled members of Three Affiliated Tribes to determine the paternity of an Indian child living with her mother on the Indian reservation," where "'paternity' occurred on the reservation"; (2) under *Williams v. Lee,* 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), the determination of the parentage of a child of Indian tribal members is intimately connected with the right of reservation Indians to make their own laws and be ruled by them; (3) exercising state jurisdiction "would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves" (quoting *Williams v. Lee,* 358 U.S. at 223, 79 S.Ct. 269); and (4) the facts that the mother "successfully applied for public assistance with McKenzie County outside of the reservation boundaries and that, at times, [the putative father] has resided off the reservation" were "insufficient to permit state court jurisdiction to hear and determine a claim between Indians for conduct on the reservation." In *In re M.L.M.,* 529 N.W.2d 184, 186 (N.D.1995), we rejected the Grand Forks Regional Child Support Enforcement Unit's attempt to distinguish *McKenzie County* on the bases of the mother's "term of residency off of the reservation and [the putative father's] off-reservation employment," and held the district court correctly dismissed the paternity action for lack of subject matter jurisdiction.

[¶ 18] We adhere to our decisions in *McKenzie County* and *In re M.L.M.,* and we reject the Board's attempt to distinguish them. The exercise of state court jurisdiction to determine the paternity of J.C.Y.B. in the circumstances of this case

would just as surely as in those cases "undermine the authority of the tribal courts over reservation affairs and thereby infringe on the right of the Indians to govern themselves." *In re M.L.M.*, 529 N.W.2d at 186; *McKenzie County*, 392 N.W.2d at 402. We conclude the district court lacked jurisdiction to determine the paternity of J.C.Y.B. when the judgment was entered in 1991, correctly determined the 1991 judgment was void, and properly vacated it under N.D.R.Civ.P. 60(b)(iv).

### III

■ [¶ 19] We next consider whether the district court properly granted C.G. the affirmative relief he sought—return of all money collected from him in accordance with the 1991 judgment.

■ [¶ 20] Rule 60(b)(iv), N.D.R.Civ. P., is the same as F.R.Civ.P. 60(b)(4). In interpreting our procedural rules, federal courts' interpretations of corresponding federal rules are highly persuasive. *Mid-Dakota Clinic, P.C. v. Kolsrud*, 1999 ND 244, ¶ 6, 603 N.W.2d 475. Federal decisions have held a void judgment may be vacated under F.R.Civ.P. 60(b), but affirmative relief may not be granted. *See United States v. One Toshiba Color Television*, 213 F.3d 147, 158 (3d Cir.2000) (Rule 60(b), F.R.Civ.P., does not provide for such remedies as monetary relief or transfers of property.); *Reyher v. Champion Int'l Corp.*, 975 F.2d 483, 489 n. 1 (8th Cir.1992) ("Rule 60(b) 'cannot be used to impose additional affirmative relief.' ") (citation omitted); *Adduono v. World Hockey Ass'n*, 824 F.2d 617, 620 (8th Cir.1987) ("Rule 60(b) is available, however, only to set aside a prior order or judgment. It cannot be used to impose additional affirmative relief."); *McCall–Bey v. Franzen*, 777 F.2d 1178, 1186 (7th Cir.1985) ("But the power to vacate is not the power to enforce a collateral agreement."); *United States v. One (1) Douglas A–26B Aircraft*, 662 F.2d 1372, 1378 (11th Cir.1981) (an order for return of the aircraft or damages "is without question beyond reopening of the prior judgment and therefore cannot be granted under Rule 60(b)"); *United States v. One 1961 Red Chevrolet Impala Sedan*, 457 F.2d 1353, 1356 (5th Cir.1972) (void forfeiture judgment may be vacated, but return of the property and money involved "is not within the district court's authority to grant under the Rule ... affirmative relief can not be sustained under Rule 60(b)"); and *Bishop v. United States*, 266 F.2d 657, 659 (5th Cir.1959) ("The relief provided by F.R.Civ.P. 60(b), of course, is merely to set aside a judgment." An order to account for revenues, income, profits and proceeds "was not within the permissible scope of F.R.Civ.P. 60(b).").

[¶ 21] The Board, however, did not argue affirmative relief is unavailable under N.D.R.Civ.P. 60(b)(iv), but presented a narrower argument. The Board contends, "If the District Court was without jurisdiction, the county is obligated to refund to C.G. only the money it retained." The Board argues that if the 1991 judgment is void, it should return the money it kept as reimbursement for public assistance provided to J.C.Y.B.'s mother; "otherwise it will have been unjustly enriched at C.G.'s expense." As to the money that was collected and paid directly to J.C.Y.B.'s mother, the Board argues "[i]t should not be required to return something it neither collected for its benefit nor held for its use."

■ [¶ 22] "Issues involving subject matter jurisdiction cannot be waived and can be raised sua sponte at any time." *Earnest v. Garcia*, 1999 ND 196, ¶ 7, 601 N.W.2d 260. To issue a valid order, a court must have jurisdiction over the subject matter of the action and the parties.

*Albrecht v. Metro Area Ambulance,* 1998 ND 132, ¶ 10, 580 N.W.2d 583. While a party may voluntarily submit to a court's personal jurisdiction, parties may not confer subject-matter jurisdiction by agreement, consent, or waiver. *Id.* The Board's concession would confer jurisdiction by consent where it would otherwise not exist, which it may not do.

[¶ 23] We conclude affirmative relief was not available to C.G. through the vehicle of a motion for relief under N.D.R.Civ.P. 60(b)(iv). C.G.'s remedy, if any, is outside the scope of this action.

### IV

[¶ 24] We affirm the order to the extent it denied the Board's motion to reconsider the district court's decision the 1991 judgment was void for lack of jurisdiction, and we reverse the order to the extent it ordered the Board to return the amount collected to C.G.

[¶ 25] WILLIAM A. NEUMANN, MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and GERALD W. VANDE WALLE, C.J.