2005 ND 101

**ROLETTE COUNTY SOCIAL SERVICE BOARD and the North Dakota Department of Human Services as assignees of T.P., and T.P., Individually, Plaintiffs and Appellants**

v.

**B.E., Defendant and Appellee.**

No. 20040357.

Supreme Court of North Dakota.

June 2, 2005.

John Douglas Waller, Special Assistant State's Attorney, Devils Lake, N.D., for plaintiffs and appellants.

B.E., defendant and appellee; no appearance.

KAPSNER, Justice.

[¶ 1]   The Rolette County Social Service Board and the North Dakota Department of Human Services ("Rolette") appealed from an order of the district court dismissing, without prejudice, Rolette's action against B.E. ("Barbara")[1] seeking court ordered child support and medical insurance coverage for Barbara's three minor children.   We hold the district court had concurrent jurisdiction with the tribal courts of the Turtle Mountain Band of Chippewa Indians to entertain this action and we, therefore, reverse and remand for further proceedings.

I.   Facts

[¶ 2]   T.P. ("Thomas"), the children's father, Barbara, and the three children are all members of the Turtle Mountain Band of Chippewa Indians, and it is undisputed the children were conceived on the reservation.   Thomas has custody of the children and he resides with them on the reservation.   When these proceedings were commenced, Barbara was residing in Fargo outside the boundaries of the Indian reservation.

1.   All names are pseudonyms.

[¶ 3] Having provided benefits for the children, Rolette acquired an assignment from Thomas of his rights to collect support from Barbara and then filed this action in state court against her for support. In her answer to the complaint, Barbara admits she is the mother of all three children and that she is financially able to provide medical insurance and reasonable support for the children. However, she disputes the amount of support she is obligated to provide, and she moved for dismissal of the action for lack of personal and subject-matter jurisdiction. The district court determined the tribal courts have exclusive jurisdiction over this action and dismissed the complaint without prejudice.

## II. Appealability

[¶ 4] Ordinarily, a dismissal without prejudice is not appealable because either side may commence another action. *Rodenburg v. Fargo–Moorhead Y.M.C.A.*, 2001 ND 139, ¶ 12, 632 N.W.2d 407. However, a dismissal without prejudice may be final and appealable if it has the practical effect of terminating the litigation in the plaintiff's chosen forum. *Winer v. Penny Enterprises, Inc.*, 2004 ND 21, ¶ 6, 674 N.W.2d 9. In this case, the district court's order dismissing for lack of subject-matter jurisdiction effectively foreclosed litigation of Rolette's action in the courts of this state. Consequently, we conclude the order of dismissal is final and appealable.

## III. Subject–Matter Jurisdiction

[¶ 5] Rolette asserts the trial court erred in relying upon a line of paternity cases in which this Court concluded state courts lack subject-matter jurisdiction to entertain actions to determine the paternity of Indian tribal members, because the assumption of jurisdiction by the state courts would impermissibly infringe on tribal rights of self-governance. Rolette asserts this case is distinguishable from those relied upon by the district court, because this is strictly an action to establish a support obligation, not to determine parentage, and because the respondent has conceded she is the biological mother of all three children involved in this case.

[¶ 6] A judgment entered without personal or subject-matter jurisdiction is void. *McKenzie County Soc. Serv. Bd. v. C.G.*, 2001 ND 151, ¶ 10, 633 N.W.2d 157. When the jurisdictional facts are not in dispute, the question of subject-matter jurisdiction is a question of law, and we review the jurisdiction decision de novo. *Allied Mut. Ins. Co. v. Director of North Dakota Dep't of Transp.*, 1999 ND 2, ¶ 9 n. 1, 589 N.W.2d 201. Relative to the issue of state court jurisdiction, if there is an available forum in the tribal courts, considerations of tribal sovereignty and the federal interest in promoting Indian self-governance and autonomy arise. *McKenzie County Soc. Servs. Bd. v. V.G.*, 392 N.W.2d 399, 402 (N.D.1986); *see also Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering*, 476 U.S. 877, 893, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986). Under the infringement test as set forth by the United States Supreme Court in *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), state court jurisdiction over certain claims is not allowed if it would "undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves."

[¶ 7] In *McKenzie*, 392 N.W.2d at 402, this Court held the state district court had no jurisdiction to decide a paternity action involving enrolled members of the Three Affiliated Tribes, stating "the determination of the parentage of a child of Indian tribal members is a matter that is inti-

mately connected with" the tribe's right of self-governance. This Court held the exercise of jurisdiction to decide paternity would unduly infringe on that right. *Id.* We followed the rationale of the *McKenzie* case in *In Interest of M.L.M.*, 529 N.W.2d 184, 186 (N.D.1985), wherein we held the district court properly dismissed for lack of subject-matter jurisdiction an action by the Grand Forks County Social Services Board against the alleged father, an enrolled Indian with the Turtle Mountain Band of Chippewa Indians, to determine paternity and child support. The crux of the decisions in *McKenzie* and *M.L.M.* is the belief that the determination of the parentage of a child of Indian tribal members is intimately connected with the right of reservation Indians to make their own laws and to be ruled by them. *McKenzie County Soc. Serv. Bd. v. C.G.*, 2001 ND 151, ¶ 15, 633 N.W.2d 157.

[¶ 8] Following this line of cases, the district court reasoned that it did not have subject-matter jurisdiction to entertain this case:

> Our Supreme Court from 1986 to the present day has basically said that parentage as between tribal members where conception occurs on the reservation is exclusively a tribal matter even though it may involve collection of welfare benefits.....
>
> Applying the above cases to the present case this Court determines based on the facts as it knows them that the State Court does not have subject matter jurisdiction. There appears to be no dispute that the parents and children are members of the Turtle Mountain Band of Chippewa and that conception occurred on the reservation. As between the biological mother and father there is no evidence that the parentage has been established by the Tribal Court which has exclusive jurisdiction of parentage.

The fact that the mother is presently residing off the reservation does not give the State jurisdiction. A State Court cannot take jurisdiction to set child support and collect welfare benefits when parentage has not be[en] established when it involves tribal members with conception occurring on the reservation.

While we give due regard to the district court's thoughtful analysis in this case, we believe the facts here present a different set of circumstances, distinguishing this case from the *McKenzie* and *M.L.M.* cases, resulting in the state district courts and tribal courts having concurrent jurisdiction to entertain Rolette's action to establish Barbara's support obligation.

[¶ 9] In *McKenzie*, 2001 ND 151, ¶ 3, 633 N.W.2d 157 and *M.L.M.*, 529 N.W.2d 184 (N.D.1985), the state social service agencies sought to have the state courts determine paternity and then establish a child support obligation against putative Indian fathers residing on an Indian reservation. In *McKenzie* paternity was not acknowledged by the putative father. Although in *M.L.M.* the putative father acknowledged paternity of three of four children there still remained an issue of parentage with respect to a fourth child. In this case the action to establish a support obligation is against the biological mother who concedes she is the mother of all three children. Another distinguishing factor is that Barbara, at all times relevant to this case, has resided in Fargo outside the boundaries of the Indian reservation, whereas in *McKenzie* and *M.L.M.* the putative fathers were at all relevant times residing on the Indian reservation.

[¶ 10] Under the circumstances of this case, we believe the state court's establishment of Barbara's support obligation for her children will not unduly infringe tribal

rights of self-governance. This conclusion finds support in other case decisions which have held that state courts· have concurrent jurisdiction with the tribal courts to entertain actions for child support against enrolled members of an Indian tribe. *See, e.g., Jackson County Child Support Enforcement Agency v. Swayney,* 319 N.C. 52, 352 S.E.2d 413, 418 (1987); *State ex rel. LeCompte v. Keckler,* 628 N.W.2d 749, 751 (S.D.2001); *Anderson v. Beaulieu,* 555 N.W.2d 537, 541 (Minn.App.1996); *State ex rel. Dep't of Human Servs. v. Jojola,* 99 N.M. 500, 660 P.2d 590, 593 (1993).

[¶ 11] In *Jackson* the Supreme Court of North Carolina held state courts do not have subject-matter jurisdiction to establish paternity of a child, where the alleged parent is an enrolled Indian living on the reservation, because assumption of jurisdiction would for that purpose unduly infringe the tribe's right of self-governance, and the tribe has exclusive jurisdiction to make the parentage determination. However, the Supreme Court of North Carolina further held the state courts did have subject-matter jurisdiction for collection of past debt and for establishment of future child support, if paternity was not then an issue:

> [W]e find before us nothing which suggests that the tribe's interest in self-governance would be significantly affected by the exercise of concurrent state and tribal court jurisdiction over actions to collect debts lawfully owed to the State. We find, therefore, that the exercise of state court jurisdiction over causes of action to recover debts for payment of past public assistance does not unduly infringe on the interest of Indian self-governance.
>
> The State's interest in exercising jurisdiction over causes of action for future child support is in essence the same state interest in exercising jurisdiction over actions for debts for payment of past public assistance—to secure payments by persons legally liable for a child's support as mandated by the AFDC program. Thus we find that the State's exercise of jurisdiction over actions for future child support mandated by the AFDC program likewise does not unduly infringe on tribal self-governance.

*Jackson,* 352 S.E.2d at 418. In accord with that decision is the later case of *Jackson County Child Support Enforcement Agency v. Smoker,* 115 N.C.App. 400, 445 S.E.2d 408, 415 (1994), wherein the Court of Appeals of North Carolina held that it would not unduly infringe upon tribal sovereignty if the state courts exercised subject-matter jurisdiction to decide child support even though the issue had been litigated previously in tribal court, but without notice to the state.

[¶ 12] The state has a significant interest in having a parent fulfill her obligation to provide support and maintenance to her children to the extent of her ability. N.D.C.C. § 14–09–10; *see also Roe v. Doe,* 2002 ND 136, ¶ 18, 649 N.W.2d 566. To pursue that interest, we agree with the above-cited authorities that tribal courts and state courts have concurrent subject-matter jurisdiction to determine a support obligation against an enrolled· Indian, where parentage is not at issue and the defendant is not residing on the Indian reservation when the action is commenced.

### IV.   Conclusion

[¶ 13] We conclude the state court has concurrent jurisdiction with the. tribal court to establish Barbara's child support obligation in this case. We, therefore, reverse the district court's order dismissing this action and remand for further proceedings on the merits.

[¶ 14] MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 15] I respectfully dissent. Although I agree that *McKenzie County Soc. Servs. Bd. v. V.G.*, 392 N.W.2d 399 (N.D.1986) and *In Interest of M.L.M.*, 529 N.W.2d 184 (N.D.1995) are distinguishable on their facts, I am not convinced we should distinguish them. In the first instance, I am uncomfortable with a State court determining what "undermine[s] the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves," the test prescribed, as the majority notes, by the United States Supreme Court in *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959). Because of the relationship of the federal government to the Indian tribes, *see* Article 1, § 8 of the United States Constitution ("Congress shall have power . . . [t]o regulate commerce . . . with the Indian tribes") and decisions such as *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 764, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985) (holding "The Constitution vests the Federal Government with exclusive authority over relations with Indian tribes") it seems to me to be presumptuous for the State courts to determine for the Tribes what is infringement on their right to govern themselves.

[¶ 16] Second, the Tribe itself does indeed have an interest in who is declared a parent of a child for, alone, the proceedings may result in the child being declared a member of the Tribe. Although the issue of parenthood may not be an issue in the instant case it very well may be in the future and ordinarily the Tribe is not a party to proceedings for child support.

[¶ 17] Finally, the majority opinion is on a potential collision course with its concept of concurrent jurisdiction. The collision, of course, comes when the Tribal court and the State court, each exercising its "concurrent jurisdiction," issue dueling opinions regarding the same parties and the same facts. Indeed, that was the issue in *Byzewski v. Byzewski*, 429 N.W.2d 394 (N.D.1988), when the majority of this Court held that the Tribal court, not the State court, has jurisdiction over the child custody and support claims and reversed the State court judgment. In so concluding, the *Byzewski* majority noted:

> Moreover, domestic relations among its members is an important area of "traditional tribal control." We do not believe this tribal interest in domestic relations dissipates merely because one of the parties to a marriage is a non-Indian. Thus, in view of the traditional tribal interest over domestic relations, *which we believe to be an integral component of tribal self-government*, a non-Indian divorce plaintiff's compliance . . . is not necessarily determinative of a district court's subject matter jurisdiction over such matters as child custody and support where the custodial domicile has at all pertinent times been on the reservation.

*Id.* at 399 (citations omitted) (emphasis added).

[¶ 18] It might be argued that *Byzewski* is distinguishable because here Barbara is not presently domiciled on the Reservation; but Thomas and the three children for whom support is sought are living on the Reservation and, unlike *Byzewski*, here *both* parties are members of the Tribe. Had we not reversed the district court in *Byzewski* there may have been a stalemate. *Byzewski* was also decided before this Court adopted N.D.R.Ct. 7.2, requiring the courts of this State to recognize Tribal court judgments except under certain limited conditions, another complicating factor to concurrent jurisdiction. I specially concurred in *Byzewski* on

the narrow ground that the Tribal court action predated the State court action, although only by one day. Perhaps that is an answer to the dilemma I pose above. Nevertheless, the race to the Tribal court or State court is a poor response to the *Williams* infringement test. The Court, applying the *Williams* test in *Byzewski*, noted that test

> while resembling in some respects a sufficient contacts test for ascertaining personal jurisdiction, is actually a rule for gauging whether a court has subject matter jurisdiction over the action itself. Furthermore, contacts within the state but off the reservation, which might arguably suffice to grant a court personal jurisdiction over an Indian domiciled on a reservation, are not necessarily sufficient to grant the court subject matter under the infringement test.

*Byzewski*, 429 N.W.2d at 398 (citations omitted).

[¶ 19] While I did not sign the *Byzewski* majority but rather concurred on the basis of first in time, I have subsequently recognized Byzewski as the controlling precedent. *See In Interest of M.L.M.*, 529 N.W.2d at 185, discussing the holding in *McKenzie County Social Servs. Bd. v. V.G.*, 392 N.W.2d 399 (N.D.1986), that the determination of the parentage of a child of Indian Tribal members is a matter that is intimately connected with the Tribe's right of self-government and citing *Williams* and *Byzewski* for the proposition that in view of the availability of a Tribal forum the exercise of jurisdiction by the state district court would unduly infringe on that right.

[¶ 20] Unfortunately, this case was submitted to this Court without briefing by the appellee. Nevertheless, I believe the majority in this case, relying on case law from other jurisdictions whose recognition of Tribal self-government may be substantially different from that in North Dakota, has set out on a substantially different path from that established in our previous case law. Because I believe that path does interfere with Tribal self-government and is not well advised, I dissent.

[¶ 21] Gerald W. Vande Walle, C.J.