2009 ND 142

**Marlan SHULL, Plaintiff and Appellee**

v.

**Clint WALCKER, Defendant and Appellant**

and

**Noreen Walcker, Defendant.**

No. 20090021.

Supreme Court of North Dakota.

July 21, 2009.

Rehearing Denied Aug. 18, 2009.

DeWayne A. Johnston (argued) and Jacey L. Johnston (appeared), Grand Forks, ND, for plaintiff and appellee.

David A. Garaas, DeMores Office Park, Fargo, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Clint Walcker appealed from a district court judgment, an order correcting clerical error and denying Walcker's post-judgment motions, and an order denying Walcker's motion to vacate the clerical error correction. We affirm, holding the district court did not err when it denied Walcker's motions for post-judgment relief under N.D.R.Civ.P. 60(b), and did not err in its judgment finding Walcker liable for damages in the amount of $30,433.40.

I.

[¶ 2] In November of 2006, Marlan Shull, a land developer in Grand Forks, entered into an agreement with Clint and Noreen Walcker for the purchase of a town home. The parties agreed upon a purchase price of $179,900, and included in the purchase agreement two earnest-money clauses, which together required the Walckers to deposit $1,000 in earnest money. Shull further agreed to rent the Grand Forks property to the Walckers pending the sale of their home in Omaha, Nebraska at a rental price of $1,450 per month.

[¶ 3] The Walckers rented the town home from November 17, 2006 to May 16, 2007. Each rental payment the Walckers made during this time period was returned for non-sufficient funds. In March of 2007, the Walckers sent Shull a check for $8,025 to cover the past rent due; however, this check was also returned for non-sufficient funds. Although the Walckers indicated to Shull they would obtain a loan to cover the past rent due, they did not pay the money while residing in the town home. In May of 2007, Shull told the Walckers they would have to leave the premises as "[t]here was no effort to buy the place," and the Walckers vacated the residence.

[¶ 4] On May 31, 2007, Shull filed a complaint against the Walckers, asking for $10,650 for past rent due and a $500 security deposit owed by the Walckers. Shull further asked for damages to reflect lost opportunity to sell to another buyer. Specifically, Shull claimed that, over the period of time the Walckers occupied the town home the value of the property decreased due to the weaker real estate market in Grand Forks, and he was unable to sell the home as new since the Walckers had lived there for several months. After the Walckers vacated the home, Shull attempted to sell it for the original contract price of $179,900; however, Shull was eventually able to sell the house in the fall of 2007 for $148,000.

[¶ 5] The Walckers did not file an answer to Shull's complaint. At a scheduling conference on October 4, 2007, the district court informed Clint Walcker that Shull intended to bring a motion for default judgment and advised him to consult with an attorney. On October 25, 2007, Shull

moved for default judgment under N.D.R.Civ.P. 55. The motion was served on Walcker but he did not file a response to Shull's motion. The district court held a hearing on February 20, 2008, announcing it would grant Shull's motion for default judgment as "there was never any Answer served in response to the Complaint at any time; not only not timely, but at any time." However, the court stated it would hear testimony to determine the proper amount of damages. Shull testified that, a few weeks prior to the hearing date, the Walckers paid $10,650, which he considered a payment on the outstanding rent. Shull further agreed to drop the $500 for the security deposit from the damages sought, as the judge indicated such money could only be applied to physical property damages and the balance returned to the renters.

[¶ 6] Clint Walcker testified at the hearing that his purchase agreement with Shull was conditioned upon his obtaining financing, which he had not received. Walcker stated he did not believe he owed Shull any damages beyond damages for past rent due, which he had already paid. He also claimed that Shull had miscalculated the amount owed for rent at seven months, when the Walckers had only occupied the town home for a six-month period from November 17, 2006 to May 16, 2007. Walcker argued the amount owed for rent was $9,200.

[¶ 7] On April 17, 2008, the district court issued its findings of fact, conclusions of law, and order for judgment granting Shull's motion for default judgment. The court dismissed the action brought against Noreen Walcker, as no service had been made upon her. Regarding damages for past rent due, the court agreed with Clint Walcker that he was only responsible for six months of rent totaling $9,183.30. However, the court held under N.D.C.C.

§ 32–03–14 that Walcker was responsible for $31,900, the difference between the contract price of $179,900 and the $148,000 which the town home was ultimately sold for. The court credited $10,650 for the amount already paid to Shull, and found that Walcker owed Shull damages in the amount of $30,433.30.

[¶ 8] On May 9, 2008, Walcker moved the district court for post-judgment relief. First, Walcker made a motion under N.D.R.Civ.P. 52(b) for the court to make additional findings regarding a condition precedent that was not fulfilled regarding the purchase agreement, and which would prevent the agreement from forming a binding contract. Specifically, Walcker pointed to language in the purchase agreement noting that the agreement was "subject to appraisal of sales price or greater" as proof that there was a condition precedent. Second, due to this condition precedent, Walcker moved to vacate the judgment under N.D.R.Civ.P. 59(b)(6). Third, Walcker moved to alter or amend the judgment under N.D.R.Civ.P. 59 because of the condition precedent. Finally, Walcker moved that he be relieved from the monetary judgment under N.D.R.Civ.P. 60(b)(i).

[¶ 9] On August 14, 2008, the district court held a hearing on Walcker's post-judgment motions. Walcker argued it did not matter that he had failed to file an answer to Shull's complaint, as he had appeared at the default judgment hearing. Walcker further argued he was not required to file an answer because the issue of a condition precedent was not an affirmative defense, but rather was an issue that Shull, as plaintiff, was required to address to prove the existence of a valid contract. On December 3, 2008, the district court issued its memorandum decision denying Walcker's post-judgment motions. The court dismissed Walcker's

N.D.R.Civ.P. 52(b), 59, and 59(b)(6) motions, as "the judgment entered ... was entered by default with the evidentiary hearing being held pursuant to Rule 55(a)(2)(A) for the purpose of assessing damages." Regarding Walcker's N.D.R.Civ.P. 60(b) motion, the court stated that Walcker had "every opportunity to raise the condition precedent defense prior to entry of the default judgment," and had been advised he needed to serve an answer and response to the default judgment motion. The court noted Walcker had not proved the existence of exceptional circumstances to justify relief from a default judgment. Further, the court noted the contract was silent as to who bore the responsibility to obtain the appraisal, and that Walcker had effectively waived the condition precedent when he did not himself obtain an appraisal or insist upon Shull obtaining an appraisal.

[¶ 10] The court's December 3 order amended its April 17 order granting Shull default judgment and $30,433.40 in damages. Specifically, the court noted that it had made a typographical error by marking down the November 2006 value of the town home as $179,000, rather than $179,900. On December 18, Walcker petitioned the court to vacate the court's amendment, arguing testimony on the market value at that time stated that the total value was "around" $179,900, but did not specify the precise amount. Walcker stated this was a substantive, and not clerical, error in which the court had changed its mind. The court denied his motion, stating the change was clerical and resulted from a typographical error.

## II.

[¶ 11] Walcker argues the district court erred in denying Walcker's motions for post-judgment relief. First, Walcker contends the district court should have provided post-judgment relief under N.D.R.Civ.P. 52(b) and 59(b)(6). N.D.R.Civ.P. 52(b) states that:

> On motion served and filed no later than 15 days after notice of entry of judgment the court may amend its findings—or make additional findings—and may amend the judgment. The motion may accompany a motion for a new trial under Rule 59. When findings of fact are made in actions tried without a jury, the sufficiency of the evidence supporting the findings may be later questioned whether or not the party raising the question in the district court objected to the findings, moved to amend them, or moved for partial findings.

Walcker further requested a new trial under N.D.R.Civ.P. 59(b)(6), which provides that a new trial might be granted if there was insufficient evidence to justify the verdict. The underlying root of both arguments is Walcker's contention that a condition precedent barred his agreement with Shull from being an enforceable contract, and that the court should have ordered a new trial or amended its judgment to account for the application of such a condition.

[¶ 12] The district court denied Walcker's motion to apply either N.D.R.Civ.P. 52(b) or 59(b)(6), because it had already issued its default judgment by the time the issue of a condition precedent had been raised for the first time. Rule 60(b) N.D.R.Civ.P. is the exclusive means for opening a default judgment. *Filler v. Bragg*, 1997 ND 24, ¶ 8, 559 N.W.2d 225. Because the issue of a condition precedent was raised after default judgment was ordered, we decline to consider the merits of Walcker's argument regarding a condition precedent under Rules N.D.R.Civ.P. 52 and 59(b)(6). However, we review whether the district court erred when it denied Walcker's N.D.R.Civ.P. 60(b) motion, and

thus whether or not the court should have considered if a condition precedent warranted the grant of a new trial or amendment to the court's judgment.

[¶ 13] On appeal, to establish a basis for relief under N.D.R.Civ.P. 60(b) from a district court's denial of a motion for relief from a default judgment, a party must show the district court abused its discretion. *US Bank Nat'l Ass'n v. Arnold*, 2001 ND 130, ¶ 21, 631 N.W.2d 150. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *Id.* An abuse of discretion by the trial court is never assumed and must be affirmatively established, and this Court will not overturn a court's decision merely because it is not the one it would have made had it been deciding the motion. *First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 794–95 (N.D.1986).

[¶ 14] This Court has previously stated there should generally be greater liberty in granting motions under N.D.R.Civ.P. 60(b) when the matter involves a default judgment rather than a judgment following a full trial on the merits. *See State v. Red Arrow Towbar Sales Co.*, 298 N.W.2d 514, 517 (N.D. 1980); *City of Wahpeton v. Drake–Henne, Inc.*, 228 N.W.2d 324, 330 (N.D.1975). However, a Rule 60(b) motion is not a substitute for appeal and should not be used to relieve a party from free, calculated and deliberate choices he or she has made. *Hefty v. Aldrich*, 220 N.W.2d 840, 846 (N.D.1974). The moving party bears the burden of establishing sufficient grounds for disturbing the finality of the judgment, and relief should be granted only in exceptional circumstances. *Follman v. Upper Valley Special Educ. Unit*, 2000 ND 72, ¶ 10, 609 N.W.2d 90. "[A] decision to submit only certain evidence at a stage in the proceedings generally cannot later constitute exceptional circumstances justifying relief from a judgment." *Id.* at ¶ 11. "A defendant's own errors will not always constitute proper grounds for relief from a default judgment." *Beaudoin v. South Texas Blood & Tissue Center*, 2005 ND 120, ¶ 40, 699 N.W.2d 421. Rather, the applicable standard under N.D.R.Civ.P. 60(b)(i) to relieve a party from a judgment is whether there was "mistake, inadvertence, surprise, or excusable neglect." *Id.* (quoting N.D.R.Civ.P. 60(b)(i)).

[¶ 15] In *Follman*, this Court rejected the Rule 60(b) challenge of the appellant who provided only a "conclusory affidavit" in response to a summary judgment action rather than evidence which would have raised a genuine issue regarding his disability. 2000 ND 72, ¶ 12, 609 N.W.2d 90. This Court noted that Follman's untimely submission of additional evidence to support his motion for reconsideration did not create exceptional circumstances, and he should have timely presented sufficient evidence in order to protect his rights. *Id.* Here, Walcker did not answer Shull's complaint, did not file a response to Shull's motion for default judgment, and disregarded the district court's recommendations that he seek counsel until after the court entered default judgment against him. Nor is there any explanation conforming to the requirements of Rule 60(b)(i) which would justify Walcker's failure to raise the issue of a condition precedent until after the court entered default judgment. The district court concluded that, by waiting to raise the issue of a condition precedent until after the default judgment, Walcker waived the requirement. The closest Walcker has come to offering such an explanation was at the district court's hearing on the post-judgment relief motions,

where his counsel contended it was not Walcker's burden to argue the existence of a condition precedent before judgment was entered:

> This is not an affirmative defense. This is what the plaintiff has to prove. He has to prove that he has a contract that this Court can award damages on; and he didn't do it in this case. And, therefore, when this Court heard the testimony, whether taken by default or not, that there was no appraisal. And you have the purchase agreement submitted into evidence, which has a condition precedent.... This Court has the evidence before it that the plaintiff cannot win, in this case, on a default matter.

However, this Court has previously found that the failure of a condition precedent is, indeed, an affirmative defense which must be pled in the answer to a filed complaint. *First Nat'l Bank & Trust Co. v. Jacobsen*, 431 N.W.2d 284, 287 (N.D.1988). Therefore, it was Walcker's burden to raise the affirmative defense of a condition precedent prior to judgment being entered against him, and he failed to do so. Walcker's decision to take no action to protect his interests in the face of a lawsuit and a motion for a default judgment against him was a deliberate and free choice, and does not constitute "exceptional circumstances" to justify relieving him from the default judgment. Insofar as Walcker argues the lack of an appraisal under the contract to purchase the home was a failure of proof of the damages under N.D.R.Civ.P. 55, there was sufficient proof of damages at the evidentiary hearing on damages ordered by the district court.

### III.

[¶ 16] Walcker finally argues the district court's award of damages to Shull in the amount of $30,433.30 was contrary to the contract between the parties and North Dakota law. Walcker's first contention on the damages award is that he has no duty to pay damages because there was no valid contract between the parties. However, as we have discussed above, the question of whether the contract was invalid hinges upon the fulfillment of a condition precedent. Walcker did not raise this issue before the trial court entered default judgment against him. Therefore, we look to Walcker's other issues regarding the validity of the court's damages award. First, Walcker contends the court entered a default judgment award different from that prayed for in Shull's demand for judgment. Second, Walcker argues that even if the court did not enter a judgment different from that prayed for, the damages could not exceed the amount agreed upon by the parties as earnest money in the purchase agreement.

### A.

[¶ 17] Walcker alleges the district court entered a default judgment award which was different than that prayed for in the demand for judgment. Specifically, Walcker contends there was nothing in the notice of hearing provided to him which suggested the court's hearing might end in a judgment against him for the difference between the purchase price agreed upon in Shull's contract with Walcker, and the price which Shull ultimately sold the property for. In support of his argument, Walcker points to N.D.R.Civ.P. 54(c) which states:

> A judgment by default may not be different in kind from or exceed the amount prayed for in the demand for judgment. Except as to a party against whom a judgment is entered by default, every final judgment must grant the relief to which the party in whose favor it is rendered is entitled, even if the

party has not demanded that relief in the pleadings.

Walcker argues that Shull's complaint must have specifically requested the type of damages ultimately rewarded by the district court, and claims that Shull's complaint requested only damages for lost rent, damages for not being able to market the property as new, lost marketing opportunities, and specific performance of the parties' contract.

[¶ 18] However, Shull's complaint also specifically requested damages incurred as a result of market fluctuation. This was a controlling factor in the district court's judgment applying N.D.C.C. § 32–03–14, which allows for damages for breach of an agreement to buy realty by determining "the excess, if any, of the amount which would have been due to the seller under the contract over the value of the property." Further, N.D.R.Civ.P. 54(c) does not specify that the damages prayed for be in the petitioner's complaint, but rather that it be included in the demand for judgment. Accordingly, the affidavit of proof submitted by Shull on October 26, 2007, to accompany his demand for default judgment specifically noted he had incurred a loss of $31,900, which represented the difference between the amount Shull and Walcker contracted for in their purchase agreement and the amount which Shull eventually obtained for the town home when it sold in the fall of 2007. The court did not err in the type of damages awarded to Shull.

## B.

[¶ 19] Walcker next argues that, even if the district court did not err in which type of damages it awarded under N.D.R.Civ.P. 54(c), the damages should still be restricted to the earnest money amount in the purchase agreement.

[¶ 20] Earnest money is a comparatively small down payment made as an assurance that the purchaser is in earnest and good faith, and that if he or she fails to purchase the property after making the payment, the deposit will be forfeited. *Bishop Ryan High School v. Lindberg*, 370 N.W.2d 726, 728 (N.D.1985). This Court has previously considered whether a particular earnest money agreement limited the seller's remedy to the earnest money paid, or whether there were additional remedies the seller could pursue. *Dosland v. Netland*, 424 N.W.2d 141, 141 (N.D.1988). While this Court did not state a hard and fast rule on the matter in *Dosland*, we did find the clause allowing for the earnest money as liquidated damages "without prejudice or other rights and legal remedies" was ambiguous, suggesting there could or could not be additional remedies available to the seller. *Id.* at 142.

[¶ 21] Whether an earnest money agreement limits a seller's remedies to the earnest money itself, then, is a matter of contractual interpretation. Here, the earnest money clause in the purchase agreement reads:

> The sum of $ *500.00* ... as earnest money to be deposited upon acceptance of this purchase agreement, by all parties, according to respective state law in a trust account of the *LISTING BROKER*, but to be returned to buyer(s) if purchase agreement is not accepted by the seller(s). Said earnest money is part payment for the purchase of the property.

The purchase agreement further contains an "Additional Earnest Money Deposit" clause which states:

> When Buyer signs this Agreement, Buyer will deposit $ *500.00* with listing broker in *certified funds*, as additional earnest money. At closing, this amount will be considered as part of the pay-

ment required under the Purchase Agreement and will be credited against the purchase price. If the Purchase Agreement is not closed, the earnest money deposit will be disbursed according to the terms of the Purchase Agreement; Buyer and Seller shall immediately sign a cancellation of Purchase Agreement.

Neither of these clauses considers the earnest money provided for in the agreement to be the sole remedy in case of a breach by Walcker. Nor, as they did in *Bishop Ryan High School,* 370 N.W.2d at 728, and *Dosland,* 424 N.W.2d at 142, do the clauses refer to liquidated damages. Rather, both clauses consider that the earnest money is simply considered part payment toward the total amount due for purchase of the town home. We find persuasive the holding of the Idaho Supreme Court in *Margaret H. Wayne Trust v. Lipsky,* 123 Idaho 253, 846 P.2d 904 (1993), which noted of earnest money agreement clauses:

> [I]t is important to remember that in the normal transaction for the purchase of a home, the amount of the deposit is seldom truly negotiated by the parties with any thought as to whether it is a reasonable pre-estimate of the actual damages likely to be incurred in the event of a default, and thus we are unwilling to interpret the clause in question as precluding the seller from electing to seek actual damages when the amount deposited is inadequate compensation for the breach. This is not to say, however, that an agreement for the purchase of real property may not be clearly drafted so as to limit the seller's remedy to retaining the earnest money deposit as liquidated damages; we merely find that this clause, even though inartfully drafted, did preserve Wayne's right to choose among retention of the earnest money,

suit for actual damages, or action for specific performance.

*Id.* at 909.

[¶ 22] Here, nothing in the agreement's two earnest money clauses precluded Shull from seeking additional remedies. Furthermore, the amount Walcker deposited as earnest money—$1000—when compared to the overall contract price of the home—$179,900—can hardly be considered adequate compensation for potential damages resulting from a breach, given the lack of any language limiting Shull's remedy to the earnest money deposits in the event of Walcker breaching the agreement. Finally, N.D.C.C. § 9-08-04 states that contracts for liquidated damages are void except where the parties agree to an amount presumed to be the damage in cases in which it would be "impracticable or extremely difficult to fix the actual damage." Our case law requires that there be a reasonable endeavor by the parties to fix the compensation for the breach of contract. *Eddy v. Lee,* 312 N.W.2d 326, 330 (N.D.1981). No evidence was presented before the trial court that the earnest money amount was the result of a negotiation between the parties to be a reasonable pre-estimate of such damages. We affirm the damages awarded by the district court to Shull in the amount of $30,433.30.

## IV.

[¶ 23] We have considered the remaining issues and arguments raised by Walcker and determine they are either unnecessary to our decision or without merit. We affirm the judgment of the district court awarding Shull damages in the amount of $30,433.30, the order of the court correcting clerical error and denying Walcker's post-judgment motions, and the order denying Walcker's motion to vacate clerical error.

[¶ 24] DALE V. SANDSTROM, DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.