2011 ND 150

Darrel GUSTAFSON and One
Stop Market, Plaintiffs
and Appellees

v.

ESTATE OF Leon POITRA and
Linus Poitra, Defendants
and Appellants.

No. 20100277.

Supreme Court of North Dakota.

Aug. 10, 2011.

Rehearing Denied September 15, 2011.

Debra L. Hoffarth (argued), Minot, ND, for plaintiffs and appellees.

Linus Poitra (appeared), self-represented, and Raymond A. Poitra (argued), self-represented, Belcourt, ND, for defendants and appellants.

KAPSNER, Justice.

[¶ 1] Linus Poitra appealed the default judgment entered by the district court regarding a lease between Darrel Gustafson as lessee and Leon Poitra and Linus Poitra as lessors. Linus Poitra argued the district court did not have subject matter jurisdiction to enter the default judgment because the Poitras are members of the Turtle Mountain Band of Chippewa Indians, and the land subject to the lease is Indian-owned fee land located within the boundaries of the Turtle Mountain Indian Reservation. Linus Poitra argued the default judgment infringed upon tribal sovereignty because of cases pending in the Turtle Mountain Tribal Court. We vacate the default judgment because the district court did not have subject matter jurisdiction over the lease.

I

[¶ 2] According to tribal court documents in the record before this Court, the Poitras are members of the Turtle Mountain Band of Chippewa Indians, and the land subject to the lease is fee land located within the boundaries of the Turtle Mountain Indian Reservation. Gustafson is non-Indian. Gustafson operates a business called One Stop Market in a building located in part on his land, and in part on land owned by Leon Poitra, now deceased. Gustafson entered into a lease with Leon Poitra and his son Linus Poitra in 1997 to use the building straddling the boundary line of his land and Leon Poitra's land. Leon Poitra died and his estate had entered probate proceedings in the Turtle Mountain Tribal Court ("tribal court") when this action was commenced. Gustafson filed a complaint in the state district court, alleging Leon Poitra's estate ("the Estate") owed him money for maintenance and repairs he made on the building. Gustafson asked the district court to declare the proportions of ownership of the building and land between him and the Estate. Gustafson asked the district court to make a declaratory judgment on what the Estate owed him, whether the building straddling the boundary should be sold or destroyed, and he asked that the lease be canceled. Tribal court filings in the record show Gustafson attempted to bring claims as a creditor against the Estate in the tribal court and had contested the jurisdiction of the tribal court.

[¶ 3] Linus Poitra and the Estate, with Raymond Poitra as personal representative of the Estate, filed a special appearance with the district court contesting its subject matter jurisdiction and personal jurisdiction over them. Linus Poitra and

the Estate claimed the tribal court had jurisdiction over this matter because the property of the Estate was subject to probate in the tribal court, and there was a pending quiet title action between the Poitras and Gustafson in the tribal court. They also claimed the district court lacked jurisdiction because the building was located on land within the reservation boundaries. Linus Poitra and the Estate did not file an answer to Gustafson's complaint, nor did they file any other response besides the special appearance contesting jurisdiction. The district court held an omnibus hearing on the issue of the district court's jurisdiction. Gustafson appeared at the hearing represented by an attorney. Raymond Poitra appeared on behalf of the Estate, and Linus Poitra appeared without counsel. After the hearing, the district court ordered the parties to submit briefs on the jurisdictional issues. The Poitras did not file a brief, and the district court determined it had jurisdiction over the matter.

[¶ 4] The Poitras subsequently responded they needed more time to file responses because they were waiting for Raymond Poitra to be appointed as personal representative of the Estate in tribal court. Gustafson then moved for a default judgment because the Poitras had not filed an answer to his complaint. The Poitras responded in opposition to the motion for default judgment and again contested the jurisdiction of the district court. The district court did not hold a hearing on the merits of Gustafson's complaint and relied on the lease and an affidavit by Gustafson to enter a default judgment. The district court found Gustafson owned 25 percent of the land and building, and the Estate owned 75 percent of the land and building, based on Gustafson's affidavit. The district court found the lease was valid and ongoing and declared Gustafson was entitled to retain rent money he paid to es-

crow, because he paid for costs for which the Estate had been obligated. On appeal, Linus Poitra argued the district court did not have jurisdiction to hear this matter, and the court erred in declaring Gustafson owned 25 percent of the land and building, because a survey showed he owned 7 percent.

[¶ 5] On appeal, Linus Poitra, as a party who signed the lease, argued the district court did not have subject matter jurisdiction over Indian-owned fee land within the boundaries of the reservation that is part of an estate being probated in tribal court.

## II

[¶ 6] Gustafson argued this appeal should be dismissed because Linus Poitra failed to first bring a motion for relief from the default judgment in the district court under N.D.R.Civ.P. 60(b). Linus Poitra appealed primarily on the issue of the district court's subject matter jurisdiction, but some of his arguments on appeal were on the merits of the case.

[¶ 7] The district court ordered the Poitras to file responsive pleadings. The Poitras' only responses were to contest the jurisdiction of the district court. The district court entered a default judgment after the Poitras failed to file an answer or respond to the merits of Gustafson's complaint. A party's exclusive means of opening a default judgment is to bring a motion in the district court under N.D.R.Civ.P. 60(b), instead of appealing directly from the default judgment. *Flemming v. Flemming*, 2010 ND 212, ¶ 3, 790 N.W.2d 762 (citing *Shull v. Walcker*, 2009 ND 142, ¶ 12, 770 N.W.2d 274). The district court may grant the motion for relief from a default judgment and decide the case on the merits, or the court may dismiss the motion for relief from a default judgment and then the defendant may ap-

peal the denial of the motion for relief from a default judgment. *Id.* (citing *State ex rel. Dep't of Labor v. Riemers*, 2008 ND 191, ¶ 16, 757 N.W.2d 50; *Overboe v. Brodshaug*, 2008 ND 112, ¶¶ 8–9, 751 N.W.2d 177). Issues must be presented to the district court so the district court can develop the issues and a record for this Court to review on appeal. *Id.* (citing *Bentley v. Bentley*, 533 N.W.2d 682, 683 (N.D.1995)). However, this Court may consider whether the district court had subject matter jurisdiction and may consider the issue sua sponte. *Albrecht v. Metro Area Ambulance*, 1998 ND 132, ¶ 9, 580 N.W.2d 583. In this case, the matter of jurisdiction was consistently, though inartfully and ineffectively, brought to the attention of the district court. We review the issue of the district court's jurisdiction over the subject matter of this case.

### III

[¶ 8] Linus Poitra argued the district court did not have subject matter jurisdiction because the Estate was subject to probate in the tribal court. Gustafson argued the district court had jurisdiction because the case was about a lease and property rights, and the tribal court did not have jurisdiction over the lease and property. The issue is whether the state district court had jurisdiction to construe the provisions of a lease, and rights attached to the lease, for Indian-owned fee land within the exterior boundaries of the Turtle Mountain Indian Reservation, where the non-Indian lessee brought his claim against the Indian lessors in the state court.

[¶ 9] A judgment is void if the court entering the judgment did not have subject matter jurisdiction. *Rolette Cnty. Soc. Serv. Bd. v. B.E.*, 2005 ND 101, ¶ 6, 697 N.W.2d 333 (citing *McKenzie Cnty. Soc. Serv. Bd. v. C.G.*, 2001 ND 151, ¶ 10,

633 N.W.2d 157). "Subject-matter jurisdiction is the court's power to hear and determine the general subject involved in the action. . . ." *Investors Title Ins. Co. v. Herzig*, 2010 ND 138, ¶ 57, 785 N.W.2d 863 (quoting *Albrecht*, 1998 ND 132, ¶ 10, 580 N.W.2d 583). Subject matter jurisdiction is derived from the constitution and laws and cannot be conferred by agreement, consent, or waiver. *Id.* (citing *Albrecht*, at ¶ 10). "When the jurisdictional facts are not in dispute, the question of subject-matter jurisdiction is a question of law, and we review the jurisdiction decision de novo." *Rolette Cnty. Soc. Serv. Bd.*, at ¶ 6. The parties have not disputed that the Poitras are members of the Turtle Mountain Band of Chippewa Indians, Gustafson is non-Indian, and the land Gustafson leases from the Poitras is fee land.

[¶ 10] "Relative to the issue of state court jurisdiction, if there is an available forum in the tribal courts, considerations of tribal sovereignty and the federal interest in promoting Indian self-governance and autonomy arise." *Kelly v. Kelly*, 2009 ND 20, ¶ 11, 759 N.W.2d 721 (quoting *Rolette Cnty. Soc. Serv. Bd.*, 2005 ND 101, ¶ 6, 697 N.W.2d 333). A state court does not have jurisdiction over a civil action if state court jurisdiction undermines tribal authority. *Luger v. Luger*, 2009 ND 84, ¶ 8, 765 N.W.2d 523 (citing *Winer v. Penny Enters., Inc.*, 2004 ND 21, ¶ 11, 674 N.W.2d 9). Under the infringement test set forth by the United States Supreme Court in *Williams v. Lee*, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959), state court jurisdiction over certain claims is prohibited if it would "undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Kelly*, at ¶ 11 (quoting *Williams*, at 223, 79 S.Ct. 269); *see also Three Affiliated Tribes of the Fort Berthold Reserva-*

*tion v. Wold Eng'g, P.C.,* 467 U.S. 138, 147–48, 104 S.Ct. 2267, 81 L.Ed.2d 113 (1984). In *Williams,* a non-Indian creditor operating a general store on reservation land brought an action against an Indian in state court. 358 U.S. at 217–18, 79 S.Ct. 269. The United States Supreme Court said, "There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves." *Id.* at 223, 79 S.Ct. 269. Though the claimant was non-Indian, "He was on the Reservation and the transaction with an Indian took place there." *Id.* Under the infringement test, tribal courts have exclusive civil jurisdiction over claims in which a non-Indian asserts a claim against an Indian for conduct occurring on that Indian's reservation. *Roe v. Doe,* 2002 ND 136, ¶ 8, 649 N.W.2d 566 (citing *Williams,* at 223, 79 S.Ct. 269).

[¶ 11] Gustafson argued the state district court had subject matter jurisdiction in this case because the tribal court did not. Absent express congressional delegation, a tribe's exercise of its sovereign powers is limited to what is necessary to protect tribal self-government or control internal relations, because tribes are domestic-dependent nations. *Montana v. United States,* 450 U.S. 544, 564, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981). Indian tribes do not have the inherent sovereign power to regulate non-members unless an exception to the general rule from *Montana* has been met. *Id.* at 565, 101 S.Ct. 1245. One exception allows a tribe to regulate "the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." *Id.* (citing *Williams,* 358 U.S. at 223, 79 S.Ct. 269).

The United States Supreme Court "assume[s] that 'where tribes possess authority to regulate the activities of nonmembers, civil jurisdiction over disputes arising out of such activities presumably lies in the tribal courts....'" *Nevada v. Hicks,* 533 U.S. 353, 358 n. 2, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001).

[¶ 12] Gustafson relies on the recent United States Supreme Court decision in *Plains Commerce Bank v. Long Family Land & Cattle Co., Inc.,* 554 U.S. 316, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008), where the Court made a distinction between activities and transactions for a tribe's adjudicative authority over nonmember defendants. *See Plains Commerce Bank,* at 334, 128 S.Ct. 2709. *Plains Commerce Bank* involved a sale between a non-Indian owned bank of non-Indian owned fee land located on the Cheyenne River Sioux Indian Reservation to non-Indians. *Id.* at 320, 128 S.Ct. 2709. The Long family, Cheyenne River Sioux Indians, had been leasing the land from the bank. *Id.* at 320–21, 128 S.Ct. 2709. When the bank sold the land to non-Indians, the Long family sued in tribal court on a variety of claims, including discrimination by the bank in selling to non-Indians. *Id.* at 322, 128 S.Ct. 2709. The Supreme Court said the discrimination claim was essentially a restraint on alienation and analyzed the tribe's adjudicative authority over the sale transaction of fee land between non-Indians. *Id.* at 331–32, 128 S.Ct. 2709. The Supreme Court held the tribal court did not have jurisdiction to adjudicate the discrimination claim on the sale of fee land between non-Indians. *Id.* at 320, 128 S.Ct. 2709. The jurisdictional facts of *Plains Commerce Bank* are distinguished from the facts of this case, because the present case involves a lease of Indian-owned fee land and the rights attached to the lease, and Gustafson initiated this case involving Indian defendants in the state court.

[¶ 13] "North Dakota has disclaimed jurisdiction over Indian reservation lands." *Winer*, 2004 ND 21, ¶ 21, 674 N.W.2d 9 (citing *Three Affiliated Tribes of the Fort Berthold Reservation*, 467 U.S. at 142–43, 104 S.Ct. 2267). "[T]his Court has consistently held that state courts have no jurisdiction over civil causes of action involving Indians, arising within the exterior boundaries of an Indian Reservation, unless a majority of the enrolled residents of the Reservation vote to accept jurisdiction." *Id.* at ¶ 10 (quoting *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596, 600 (N.D.1983)). Under N.D.C.C. ch. 27–19, state courts may have jurisdiction over civil causes of action arising within the exterior boundaries of a reservation, if Indian citizens of the reservation have accepted state court jurisdiction. *Id.* (citing *Airvator, Inc.*, at 600). In *Winer*, a majority of this Court held the district court correctly decided it lacked subject matter jurisdiction over a personal injury action brought by a non-Indian plaintiff against Indian defendants for damages resulting from a motor vehicle accident occurring within the exterior boundaries of the Spirit Lake Indian Reservation. *Id.* at ¶ 1. The Spirit Lake Tribe had not consented to state court civil jurisdiction. *Id.* at ¶ 10.

[¶ 14] The state district court did not have subject matter jurisdiction in this case. Gustafson asserted a claim against the Poitras over a lease of Indian-owned fee land located within the boundaries of the reservation. Under the infringement test, state jurisdiction over a claim asserted by a non-Indian against an Indian arising within the boundaries of that Indian's reservation is prohibited. *Roe*, 2002 ND 136, ¶ 8, 649 N.W.2d 566. We cannot conclude, as Gustafson argued, the tribal court did not have jurisdiction under *Montana*, because Gustafson entered into a consensual relationship with the Poitras through the lease. 450 U.S. at 565, 101 S.Ct. 1245.

There is an available forum for this matter in the tribal courts. *See Kelly*, 2009 ND 20, ¶ 11, 759 N.W.2d 721. The Turtle Mountain Tribal Code allows for the tribal court to exercise jurisdiction over the "Ownership, leasehold, use, or possession of any property, or interest therein, located within the Court's territorial jurisdiction," Turtle Mountain Tribal Code § 2.0102(1)(c), which includes "all land on the Turtle Mountain Indian Reservation." Turtle Mountain Band of Chippewa Indians Const. and Bylaws art. II, § 1. Further, North Dakota has disclaimed jurisdiction over reservation lands, and the Turtle Mountain Band of Chippewa Indians has not consented to state court civil jurisdiction. *See* Turtle Mountain Band of Chippewa Indians Const. and Bylaws art. XIV, § 3(a); *see also* Turtle Mountain Tribal Code § 2.0102.

## IV

[¶ 15] The district court did not have subject matter jurisdiction over this matter, and we vacate the default judgment.

[¶ 16] MARY MUEHLEN MARING, concurs.

GERALD W. VANDE WALLE, C.J., concurs in the result.

CROTHERS, Justice, specially concurring.

[¶ 17] The pertinent facts in this case are that Gustafson owns a fee interest in real property located within the physical boundaries of the Turtle Mountain Indian Reservation, that Gustafson is a non-Indian, that Gustafson operates a business out of a building located partially on his real estate and partially on adjoining real estate owned by Leon Poitra's estate, that Leon Poitra was an enrolled member of the Turtle Mountain Band of Chippewa Indians and that Leon Poitra's estate is being administered in tribal court.

[¶ 18] Gustafson alleges in his complaint that a lease exists between Gustafson, Leon Poitra and Linus Poitra, but "that Linus Poitra owned no interest in the building or property described in said lease; therefore, the only proper parties to the lease were [Gustafson] and Leon Poitra." Gustafson also alleges he "is placing rent for the One Stop Building in a separate account until it is determined who owns the building and in what proportions, to whom rent is due, and the amount of rent due." Gustafson requests declaratory relief setting forth the "proportionate share of ownership of the building" and for "declaration that the building shall be torn down or, in the alternative, that an Outlot for the building be created and that said building be sold to one of the parties." Gustafson also requested cancellation of the lease and declaration of the amount of rent owed by and between the parties.

[¶ 19] Nothing on the face of the complaint suggests the parties dispute the nature and extent of land they own. In fact, Gustafson provides metes and bounds legal descriptions of the parties' respective land holdings, and the dispute here involves only the rights and responsibilities of the parties under the lease. The majority opinion concludes the lease is subject to the tribal court's exclusive jurisdiction, and I agree. However, I write separately because the majority's analysis may be too limited.

[¶ 20] The United States Supreme Court decision of *Plains Commerce Bank v. Long Family Land and Cattle Co.*, 554 U.S. 316, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008), is cited by the majority. But the case is dismissed as factually distinguishable. *See* Majority Opinion at ¶ 12 ("The jurisdictional facts of *Plains Commerce Bank* are distinguished from the facts of this case, because the present case involves a lease of Indian-owned fee land and the rights attached to the lease, and Gustafson initiated this case involving Indian defendants in the state court.").

[¶ 21] The question in *Plains Commerce Bank* was whether the tribal court had subject-matter jurisdiction to adjudicate a discrimination tort claim concerning a non-Indian bank's sale of fee land within an Indian reservation. 554 U.S. at 320, 128 S.Ct. 2709. The Court held the tribal court did not have jurisdiction. *Id.*

[¶ 22] The *Plains Commerce Bank* decision instructs and guides courts on tribal court jurisdiction:

"For nearly two centuries now, we have recognized Indian tribes as 'distinct, independent political communities,' qualified to exercise many of the powers and prerogatives of self-government. We have frequently noted, however, that the 'sovereignty that the Indian tribes retain is of a unique and limited character.' It centers on the land held by the tribe and on tribal members within the reservation.

"As part of their residual sovereignty, tribes retain power to legislate and to tax activities on the reservation, including certain activities by nonmembers, to determine tribal membership, and to regulate domestic relations among members. They may also exclude outsiders from entering tribal land. But tribes do not, as a general matter, possess authority over non-Indians who come within their borders: '[T]he inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe.' As we explained in *Oliphant v. Suquamish Tribe*, 435 U.S. 191, 98 S.Ct. 1011, 55 L.Ed.2d 209 (1978), the tribes have, by virtue of their incorporation into the American republic, lost 'the right of governing ... person[s] within their limits except themselves.' "

554 U.S. at 327–28, 128 S.Ct. 2709 (internal quotations and citations omitted). The United States Supreme Court concluded this introduction by stating, "This general rule restricts tribal authority over nonmember activities taking place on the reservation, and is particularly strong when the nonmember's activity occurs on land owned in fee simple by non-Indians—what we have called 'non-Indian fee land.'" *Id.* at 328, 128 S.Ct. 2709 (quotation omitted).

[¶ 23] The Court continued explaining a tribal court's jurisdiction over non-Indian fee land, stating:

"Our cases have made clear that once tribal land is converted into fee simple, the tribe loses plenary jurisdiction over it. Among the powers lost is the authority to prevent the land's sale—not surprisingly, as 'free alienability' by the holder is a core attribute of the fee simple. Moreover, when the tribe or tribal members convey a parcel of fee land 'to *non-Indians*, [the tribe] loses any former right of absolute and exclusive use and occupation of the conveyed lands.' This necessarily entails 'the loss of regulatory jurisdiction over the use of the land by others.' As a general rule, then, 'the tribe has no authority itself, by way of tribal ordinance or actions in the tribal courts, to regulate the use of fee land.'"

*Plains Commerce Bank*, 554 U.S. at 328–29, 128 S.Ct. 2709 (internal quotations and citations omitted).

[¶ 24] The Court then noted its precedent, *Montana v. United States*, 450 U.S. 544, 101 S.Ct. 1245, 67 L.Ed.2d 493 (1981), permitting the exercise of tribal court subject-matter jurisdiction over non-Indian fee lands and other areas involving non-Indians:

"We have recognized two exceptions to this principle, circumstances in which tribes may exercise 'civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands.' First, '[a] tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements.' Second, a tribe may exercise 'civil authority over the conduct of non-Indians on fee lands within the reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe.' These rules have become known as the *Montana* exceptions, after the case that elaborated them. By their terms, the exceptions concern regulation of 'the *activities* of nonmembers' or 'the *conduct* of non-Indians on fee land.'

"Given *Montana*'s 'general proposition that the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe,' efforts by a tribe to regulate nonmembers, especially on non-Indian fee land, are 'presumptively invalid.' The burden rests on the tribe to establish one of the exceptions to *Montana*'s general rule that would allow an extension of tribal authority to regulate nonmembers on non-Indian fee land. These exceptions are 'limited' ones, and cannot be construed in a manner that would 'swallow the rule,' or 'severely shrink' it.

"According to our precedents, 'a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction.' We reaffirm that principle today and hold that the Tribal Court lacks jurisdiction to hear the Longs' discrimination claim because the Tribe lacks the civil authority to regulate the Bank's sale of its fee land."

*Plains Commerce Bank,* 554 U.S. at 329–30, 128 S.Ct. 2709 (internal quotations and citations omitted).

[¶ 25] While holding that Indian tribes could not control the sale and ownership of non-Indian fee land, the Court did make clear that the tribe could regulate Indian and non-Indian "activity" and "conduct" on the land:

> "*Montana* does not permit Indian tribes to regulate the sale of non-Indian fee land. *Montana* and its progeny permit tribal regulation of nonmember *conduct* inside the reservation that implicates the tribe's sovereign interests. *Montana* expressly limits its first exception to the 'activities of nonmembers,' allowing these to be regulated to the extent necessary 'to protect tribal self-government [and] to control internal relations.'
>
> . . . .
>
> "The distinction between sale of the land and conduct on it is well established in our precedent, as the foregoing cases demonstrate, and entirely logical given the limited nature of tribal sovereignty and the liberty interests of nonmembers. By virtue of their incorporation into the United States, the tribe's sovereign interests are now confined to managing tribal land, 'protect[ing] tribal self-government,' and 'control[ling] internal relations.' The logic of *Montana* is that certain activities on non-Indian fee land (say, a business enterprise employing tribal members) or certain uses (say, commercial development) may intrude on the internal relations of the tribe or threaten tribal self-rule. To the extent they do, such activities or land uses may be regulated. Put another way, certain forms of nonmember behavior, even on non-Indian fee land, may sufficiently affect the tribe as to justify tribal oversight. While tribes generally have no interest in regulating the conduct of nonmembers, then, they may regulate nonmember behavior that implicates tribal governance and internal relations."

*Plains Commerce Bank,* 554 U.S. at 332–35, 128 S.Ct. 2709 (quotations and citations omitted).

[¶ 26] Here, although a theoretical argument could be made that the lawsuit is about ownership of real estate, Gustafson's litigation really concerns the leasing of a building on non-Indian fee land. *Plains Commerce Bank* reaffirmed a long line of state and federal cases concluding tribal courts have jurisdiction over conduct and business activity engaged in by a non-Indian "who enter[ed] consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." 554 U.S. at 329, 128 S.Ct. 2709. On this basis, I concur with the majority opinion holding the North Dakota district court did not have jurisdiction over Gustafson's lease-related issues because all of Gustafson's claims arise out of the lease.

[¶ 27] Had this case actually involved a dispute over ownership of the land, we would have a very difficult case to decide. I read *Plains Commerce Bank* to say the tribal court would not have had jurisdiction over the dispute. The *Plains Commerce Bank* decision dealt with a post hoc tribal court tort action being used to attack the sale of non-Indian fee land within the reservation. When viewed through the lens of subject-matter jurisdiction, I find no meaningful legal difference between an after-the-fact tort action challenging Plain Commerce Bank's sale of real estate and a dispute over ownership of non-Indian fee land.

[¶ 28] All of this highlights the collision course tribal and state courts appear to be on when making decisions about subject-

matter jurisdiction and particularly when making decisions involving competing claims to real estate ownership. The holding in *Plains Commerce Bank* regarding non-Indian fee land has been discussed. By comparison, North Dakota's precedent broadly states:

> " 'Within Indian country state jurisdiction is preempted both by federal protection of tribal self-government and by federal statutes on other subjects relating to Indians, tribes, their property, and federal programs.' *Winer v. Penny Enters., Inc.*, 2004 ND 21, ¶ 10, 674 N.W.2d 9 (quoting F. Cohen, *Handbook of Federal Indian Law* 349 (1982) (footnotes omitted)). '[T]his Court has consistently held that state courts have no jurisdiction over civil causes of action involving Indians, arising within the exterior boundaries of an Indian Reservation, unless a majority of the enrolled residents of the Reservation vote to accept jurisdiction.' *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596, 600 (N.D.1983)."

*State ex rel. Workforce Safety & Ins. v. JFK Raingutters*, 2007 ND 80, ¶ 10, 733 N.W.2d 248.

[¶ 29] The majority holds that "[u]nder N.D.C.C. ch. 27–19, state courts may have jurisdiction over civil causes of action arising within the exterior boundaries of a reservation, if Indian citizens of the reservation have accepted state court jurisdiction." Majority Opinion at ¶ 13 (citing *Winer*, 2004 ND 21, ¶ 10, 674 N.W.2d 9). The majority correctly recites our precedent, and it correctly notes the Turtle Mountain Indian Tribe has not consented to state court jurisdiction. Majority Opinion at ¶ 13.

[¶ 30] Putting all of the legal authorities together, one easily can construct an argument that neither tribal nor North Dakota courts would have had subject-matter jurisdiction over this dispute if it had been one about actual ownership of the land. This is because the *Winer, Airvator* and *JFK Raingutters* line of cases hold North Dakota courts do not have jurisdiction over civil cases involving Indians and arising on a reservation. Yet the *Plains Commerce Bank* decision holds tribal courts do not have jurisdiction over suits regarding non-Indian ownership of fee land located within a reservation. Untying this Gordian knot will be left to future cases before state and federal courts, but to me it appears we have a problem looming and litigants are forewarned of the complexities of future title disputes over non-Indian fee owned land.

[¶ 31] I note in closing that the majority also cites federal and North Dakota precedent for the proposition that exercise of state court jurisdiction over non-Indian fee land ownership would undermine tribal authority. *See* Majority Opinion at ¶ 10. Although not the basis for the decision in *Plains Commerce Bank*, that Court made clear that this prong of the *Montana* exception has limitations:

> "The second exception authorizes the tribe to exercise civil jurisdiction when non-Indians' 'conduct' menaces the 'political integrity, the economic security, or the health or welfare of the tribe.' The conduct must do more than injure the tribe, it must 'imperil the subsistence' of the tribal community. One commentator has noted that 'th[e] elevated threshold for application of the second *Montana* exception suggests that tribal power must be necessary to avert catastrophic consequences.'

> "The sale of formerly Indian-owned fee land to a third party is quite possibly disappointing to the Tribe, but cannot fairly be called 'catastrophic' for tribal self-government. The land in question here has been owned by a non-Indian

party for at least 50 years, during which time the project of tribal self-government has proceeded without interruption. The land's resale to another non-Indian hardly 'imperil[s] the subsistence or welfare of the Tribe.' Accordingly, we hold the second *Montana* exception inapplicable in this case."

554 U.S. at 341, 128 S.Ct. 2709 (internal quotations and citations omitted). Time will tell whether these words are dicta or are a direction that the second *Montana* exception must be applied more narrowly.

[¶ 32] DALE V. SANDSTROM.