2016 ND 176

**MONSTER HEAVY HAULERS, LLC, Plaintiff and Appellee**

v.

**GOLIATH ENERGY SERVICES, LLC, Karl Troestler, and George Satterfield, Defendants**

**Goliath Energy Services, LLC, and George Satterfield, Appellants.**

**Rossco Crane and Rigging, Inc., Plaintiff and Appellee**

v.

**Goliath Energy Services, LLC, Karl Troestler, and George Satterfield, Defendants.**

**Goliath Energy Services, LLC, and George Satterfield, Appellants.**

Nos. 20160080, 20160081.

Supreme Court of North Dakota.

Sept. 2, 2016.

John E. Ward (argued) and Lawrence E. King (appeared), Bismarck, N.D., for plaintiffs and appellees.

Justin J. Hagel (argued) and Monte L. Rogneby (appeared), Bismarck, N.D., for defendants and appellants Goliath Energy Services, LLC, and George Satterfield.

McEVERS, Justice.

[¶ 1] In these consolidated appeals, Goliath Energy Services, LLC, and George Satterfield challenge orders denying their N.D.R.Civ.P. 60(b) motions to vacate default judgments entered against them in favor of Monster Heavy Haulers, LLC, and Rossco Crane and Rigging, Inc. We conclude the district court acquired personal jurisdiction over the defendants in the underlying actions and did not abuse its discretion in denying the motions for relief from judgment. We affirm.

I

[¶ 2] Monster is in the oil field construction, trucking, and rigging business. Rossco is in the business of providing various crane and rigging services. Goliath is a limited liability company with its principal place of business located in Grand Junction, Colorado, and it conducted business in North Dakota. Satterfield is Goliath's president and Karl Troestler was its chief financial officer. Both Rossco and later Monster sued Goliath, Troestler, and Satterfield to collect payment of outstanding balances owed for services provided to Goliath. Rossco sought $95,243.80 plus interest, and Monster sought $226,431.35 plus interest.

[¶ 3] Rossco commenced its action by service of the summons and complaint through certified mail in November 2014. The affidavit of service indicates that Goliath, Satterfield, and Troestler were each served at three different addresses, two in Grand Junction and one in Alexander, North Dakota. The three return receipts from Alexander were signed by "Larry Adams" and "J. Leigh," who marked the "Agent" boxes on the receipts. The six return receipts from the two Grand Junction addresses were signed by "Sherry Bley," who did not mark either the "Agent" or "Addressee" boxes. The defendants did not file answers to the complaint.

[¶ 4] After Rossco filed a motion for default judgment on January 6, 2015, Satterfield phoned Rossco's attorney on January 16, 2015, and requested that copies of the summons and complaint and default judgment motion be emailed to him. Rossco's attorney sent Satterfield a "test email" to confirm his email address, and Satterfield requested that the documents

also be emailed to a Colorado attorney. On January 16, 2015, Rossco's attorney emailed the documents to Satterfield and copied them to the Colorado attorney. On January 20, 2015, Satterfield sent an email to Rossco's attorney, the Colorado attorney, and the North Dakota attorney representing Goliath and Satterfield in these appeals stating he had talked to Rossco's manager and "they have agreed to stand down and work with me." On January 21, 2015, Rossco's attorney emailed Satterfield and copied it to the Colorado attorney and the North Dakota attorney informing Satterfield that the judge had signed the order for default judgment, but that Rossco's attorney would "not prepare a judgment at this time, in light of the apparent discussions/negotiations between the parties."

[¶ 5] On January 29, 2015, Rossco's attorney sent an email to Satterfield informing him that he also represented Monster and that Monster had filed a well and pipeline lien in Billings County for a debt owed by Goliath. Satterfield asked Monster's attorney to share this information with the North Dakota attorney, but the North Dakota attorney told Monster's attorney "[a]t this time you can communicate directly with Goliath. I will let you know if that changes." On February 23, 2015, Satterfield emailed Monster's attorney to ask if Monster's position had changed following Satterfield's direct communications with Monster's general manager. However, the parties' negotiations ultimately failed.

[¶ 6] Monster commenced its action by service of the summons and complaint through certified mail in March 2015. The affidavit of service indicates Goliath, Satterfield, and Troestler were each served at the same address in Grand Junction. Two return receipts for Satterfield and Troestler were signed by "Sherry Bley," who indicated actual delivery occurred at a different Grand Junction address. Neither the "Agent" nor "Addressee" boxes were marked. The defendants did not file answers to the compliant.

[¶ 7] On May 7, 2015, Monster moved for a default judgment. The defendants did not respond, and a default judgment in favor of Monster for $240,107.23 was entered on June 9, 2015. On July 29, 2015, Rossco advised its attorney that negotiations had also failed with the defendants. Rossco's attorney filed the closing papers with the clerk of court, and a default judgment was entered against the defendants in favor of Rossco for $97,233.04 on August 3, 2015.

[¶ 8] After Monster moved to compel answers to interrogatories in aid of judgment and execution, the North Dakota attorney filed a notice of appearance on behalf of Goliath and Satterfield. On November 23, 2015, Goliath and Satterfield filed N.D.R.Civ.P. 60(b) motions to vacate the default judgments obtained by both Monster and Rossco. Goliath and Satterfield argued that service of process was insufficient and that Monster and Rossco had failed to present adequate proof to pierce Goliath's corporate veil and hold Satterfield personally liable for the debts of Goliath. The district court denied both motions for relief from the default judgments:

The above-entitled matter having come before the Court on hearing on February 2, 2016 at 2:30 pm in the Courthouse of the above-named Court on the Defendants' Motion to Vacate the Default Judgment[s] entered June 9, 2015 [and August 3, 2015] and the Plaintiff's Motion to Compel Answers to interrogatories, and it appearing that service was effectuated upon the Defendants, that the Defendants were aware of the summons, complaint, motion[s] for default judgment, and the default

judgment[s], and that the defendants failed to interpose an answer or other timely response that the Defendants' Motion to Vacate Default Judgment is not timely based on the facts presented and that Defendants have not met their burden of proof as to the defense of insufficiency of service of process and, furthermore, the defense of insufficiency of service of process was effectively waived by the Defendants' deliberate failure to timely raise it[.]

Goliath and Satterfield appealed, and the appeals were consolidated for consideration by this Court.

## II

[¶ 9] Goliath and Satterfield argue the district court erred in denying their motions to vacate the default judgments under N.D.R.Civ.P. 60(b).

[¶ 10] In *Shull v. Walcker*, 2009 ND 142, ¶¶ 13–14, 770 N.W.2d 274, this Court explained:

On appeal, to establish a basis for relief under N.D.R.Civ.P. 60(b) from a district court's denial of a motion for relief from a default judgment, a party must show the district court abused its discretion. *US Bank Nat'l Ass'n v. Arnold*, 2001 ND 130, ¶ 21, 631 N.W.2d 150. A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *Id.* An abuse of discretion by the trial court is never assumed and must be affirmatively established, and this Court will not overturn a court's decision merely because it is not the one it would have made had it been deciding the motion. *First Nat'l Bank of Crosby v. Bjorgen*, 389 N.W.2d 789, 794–95 (N.D. 1986).

This Court has previously stated there should generally be greater liberty in granting motions under N.D.R.Civ.P. 60(b) when the matter involves a default judgment rather than a judgment following a full trial on the merits. *See State v. Red Arrow Towbar Sales Co.*, 298 N.W.2d 514, 517 (N.D.1980); *City of Wahpeton v. Drake–Henne, Inc.*, 228 N.W.2d 324, 330 (N.D.1975). However, a Rule 60(b) motion is not a substitute for appeal and should not be used to relieve a party from free, calculated and deliberate choices he or she has made. *Hefty v. Aldrich*, 220 N.W.2d 840, 846 (N.D.1974). The moving party bears the burden of establishing sufficient grounds for disturbing the finality of the judgment, and relief should be granted only in exceptional circumstances. *Follman v. Upper Valley Special Educ. Unit*, 2000 ND 72, ¶ 10, 609 N.W.2d 90. "[A] decision to submit only certain evidence at a stage in the proceedings generally cannot later constitute exceptional circumstances justifying relief from a judgment." *Id.* at ¶ 11. "A defendant's own errors will not always constitute proper grounds for relief from a default judgment." *Beaudoin v. South Texas Blood & Tissue Center*, 2005 ND 120, ¶ 40, 699 N.W.2d 421. Rather, the applicable standard under N.D.R.Civ.P. 60(b)(i) to relieve a party from a judgment is whether there was "mistake, inadvertence, surprise, or excusable neglect." *Id.* (quoting N.D.R.Civ.P. 60(b)(i)).

[¶ 11] When a motion to vacate challenges a judgment as void under N.D.R.Civ.P. 60(b)(4), the district court's sole task is to determine the validity of the judgment, and a court has no discretion whether to grant the motion. *See Roe v. Doe*, 2002 ND 136, ¶ 6, 649 N.W.2d 566. If the judgment is valid, the Rule 60(b)(4) motion must be denied, and if the judgment is void, the motion must be granted

as a matter of law. *Roe*, at ¶ 6. "To issue a valid order, a district court must have both subject-matter jurisdiction and personal jurisdiction over the parties." *Alliance Pipeline L.P. v. Smith*, 2013 ND 117, ¶ 18, 833 N.W.2d 464. Our standard of review for motions under N.D.R.Civ.P. 60(b)(4) is plenary. *Roe*, at ¶ 6.

### A

[¶ 12] Goliath and Satterfield argue the default judgments are void for lack of personal jurisdiction under N.D.R.Civ.P. 60(b)(4) because Monster and Rossco "have not proven their burden demonstrating the individuals who accepted service on behalf of Goliath ... and Satterfield individually were authorized to accept such service by the respective Defendant." Goliath and Satterfield do not allege that these individuals were not authorized to accept service of process, but allege that Monster and Rossco failed to prove "Larry Adams," "J. Leigh," and "Sherry Bley" were authorized to accept service on their behalf.

[¶ 13] "Generally, personal jurisdiction over a party is acquired by service of process in compliance with N.D.R.Civ.P. 4." *Smith*, 2013 ND 117, ¶ 18, 833 N.W.2d 464. "Absent valid service of process, even actual knowledge of the existence of a lawsuit is insufficient to effectuate personal jurisdiction over a defendant." *Olsrud v. Bismarck–Mandan Orchestral Ass'n*, 2007 ND 91, ¶ 9, 733 N.W.2d 256; *see also Witzke v. Gonzales*, 2006 ND 213, ¶ 7, 722 N.W.2d 374. Rule 4, N.D.R.Civ.P., provides in relevant part:

(d) Personal service.

. . . .

(2) How service of process is made within the state.

(A) Serving an Individual Fourteen Years of Age and Older. Service must be made on an individual 14 or more years of age by:

. . . .

(v) any form of mail or third-party commercial delivery addressed to the individual to be served and requiring a signed receipt and resulting in delivery to that individual.

. . . .

(D) Serving a Corporation, Partnership, or Association. Service must be made on a domestic or foreign corporation or on a partnership or other unincorporated association, by:

(i) delivering a copy of the summons to an officer, director, superintendent or managing or general agent, or partner, or associate, or to an agent authorized by appointment or by law to receive service of process on its behalf, or to one who acted as an agent for the defendant with respect to the matter on which the plaintiff's claim is based and who was an agent of the defendant at the time of service;

. . . .

(iii) any form of mail or third-party commercial delivery addressed to any of the foregoing persons and requiring a signed receipt and resulting in delivery to that person.

. . . .

(3) How Service of Process is Made Outside the State. Service on any person subject to the personal jurisdiction of the courts of this state may be made outside the state:

(A) in the same manner as service within this state, with the force and effect as though service had been made within this state;

[¶ 14] We have said that "a plaintiff has the burden to establish that the authority to receive service of process exists

between the defendant and the individual served." *Olsrud,* 2007 ND 91, ¶ 18,. 733 N.W.2d 256; *see also Eggl v. Fleetguard, Inc.,* 1998 ND 166, ¶ 8, 583 N.W.2d 812; *Brakke v. Rudnick,* 409 N.W.2d 326, 330 (N.D.1987). But unlike the situation here, the defendants in *Olsrud, Eggl* and *Brakke* asserted that the persons served were not authorized to accept service on their behalf. *See Olsrud,* at ¶ 19 (affidavits submitted stating lawyer was not authorized by appointment or by law to accept service of process for the Association); *Eggl,* at ¶ 2–3 (defendant claimed return receipt signed by janitor was invalid service on corporation); *Brakke,* 409 N.W.2d at 328 (defendants moved to dismiss asserting insufficient service of process on various individuals and entities). Goliath and Satterfield have not cited, nor have we found, any case in which this Court has determined service of process was invalid in the absence of a defendant's allegation pointing out why service on an individual or corporation was insufficient.

[¶ 15] Relying on N.D.C.C. § 11–15–16, this Court has held a sheriff's return of service of process creates a rebuttable presumption that the stated service was made, which shifts to the defendant "the burden of proving that service of process was not properly made" under N.D.R.Civ.P. 4(d)(2)(A). *Farm Credit Bank v. Stedman,* 449 N.W.2d 562, 564 (N.D.1989); *see also Federal Land Bank v. Brakke,* 447 N.W.2d 329, 330 (N.D.1989); *Production Credit Ass'n v. Obrigewitch,* 443 N.W.2d 923, 924 (N.D.1989); *Dakota Bank and Trust Co. v. Federal Land Bank,* 437 N.W.2d 841, 843–44 (N.D.1989). Section 31–11–03(24), N.D.C.C., also creates a "disputable presumption[ ]" that "a letter duly directed and mailed was received in the regular course of the mail." We have applied this presumption in rejecting arguments that a defendant had no actual notice of judicial proceedings where the de-

fendant "failed to deny he received these pleadings [and] has not claimed he was not living at that address." *First .Bank v. Neset,* 1997 ND 4, ¶ 18, 559 N.W.2d 211; *see also Warnke v. Warnke,* 2011 ND 212, ¶ 8, 806 N.W.2d 606 ("When the presumption has been contradicted by other evidence, the issue of actual notice is for the trier of fact to decide.") This statutory presumption is similar to the federal common law "mailbox rule" which provides that "the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Schikore v. BankAmerica Supplemental Retirement Plan,* 269 F.3d 956, 961 (9th Cir. 2001); *see also* Annot., *Rebuttal of presumption of receipt of letter properly mailed and addressed,* 91 A.L.R. 161 (1934).

[¶ 16] Based on the mailbox rule and the evolution of postal services, numerous jurisdictions have adopted, through statute, rule or judicial decision, rebuttable presumptions regarding certified mail for purposes of service of process. *See, e.g., Federal Deposit Ins. Corp. v. Schaffer,* 731 F.2d 1134, 1137 (4th Cir.1984) (signed receipts of certified mail raised presumption that defendants received summons and complaint in the regular course of mail delivery); *Briner v. City of Midfield,* 831 So.2d 53, 54 (Ala.Civ.App.2002) (by statute, return of certified mail receipt properly signed is prima facie evidence of service); *Barlage v. Valentine,* 210 Ariz. 270, 110 P.3d 371, 378 (2005) (affidavit of service by certified mail is prima facie evidence of personal service which can be impeached only by clear and convincing evidence); *Johnson–Voiland–Archuleta, Inc. v. Roark & Assocs.,* 43 Colo.App. 370, 608 P.2d 818, 820 (1979) (return receipt for certified mail raises presumption of receipt by addressee, and because defendant offered no evi-

dence to rebut presumption, mere denial of receipt in pleadings was insufficient); *Aurora Loan Servs., LLC v. Condron,* 2016 WL 888127, at *11 (Conn.Super.Ct., Feb. 8, 2016) (under mailbox rule, certified mail is entitled to presumption of receipt); *Gillespie v. 896 Assocs.,* 2009 WL 1262864, at *5 (Del.Ct.Comm.Pleas, May 6, 2009) (where service of notice is sent by certified mail and there is proof of delivery, strong presumption of effective service arises); *Har–Ned Lumber Co. v. Amagineers, Inc.,* 436 N.W.2d 811, 815 (Minn.Ct.App.1989) (while service by certified mail raises a presumption of actual notice, such notice may be found where the certified mailing is properly directed to the intended recipient, even though not actually received by them); *Fodor v. MBNA Am. Bank, N.A.,* 34 A.D.3d 473, 823 N.Y.S.2d 353, 354 (2006) (presumption of receipt is created by signed certified mail return receipt); *Fender v. Deaton,* 130 N.C.App. 657, 503 S.E.2d 707, 710–11 (1998) (affidavit of service stating copy of summons and complaint was mailed by certified mail, return receipt requested and addressed to defendant, and defendant's employee signed return receipt, raised statutory presumption she acted in capacity of agent of addressee authorized to accept service on behalf of defendant); *Green v. Huntley,* 2010 WL 926016, at *4 (Ohio Ct.App., March 16, 2010) (when service is attempted by certified mail, a signed receipt returned to sender establishes a prima facie case of delivery to the addressee and valid service is presumed when any person at defendant's address received the certified mail); *Discover Prop. and Cas. Ins. Co. v. Collins,* 299 P.3d 510, 513 (Okla.Ct.Civ.App. 2013) (statutory presumption that a return receipt for certified mail signed at registered office or principal place of business is presumed to have been signed by an employee authorized to receive certified mail); *Ramsay v. Pierre,* 822 A.2d 85, 89 (Pa.Super.2003) (by rule, there is a rebuttable presumption that the signator was an agent of the defendant authorized to receive the certified mail of defendant); *MCI Telecomms. Corp. v. Tarrant Cty. Appraisal Dist.,* 723 S.W.2d 350, 356 (Tex.Ct. App.1987) (presumption of delivery applies to certified mail even though "some individual" other than addressee signs receipt). *Dunn v. Watson,* 211 W.Va. 418, 566 S.E.2d 305, 308 (2002) (a rebuttable presumption of receipt is established by mailing, and the presumption is especially strong when service is made by certified mail).

[¶ 17] We agree that a rebuttable presumption of valid service of process arises when a return receipt for certified mail is signed, and that the signator, if not the addressee, will be presumed to have acted as the agent of the addressee authorized to accept service in the absence of proof to the contrary. We believe this rule is sound, and Goliath and Satterfield's position is flawed, for four reasons. First, a sheriff's return of service creates a rebuttable presumption that service was validly effectuated, and certified mail "requiring a signed receipt and resulting in delivery to that person" is also an authorized method for personal service under N.D.R.Civ.P. 4(d)(2)(A)(v) and (D)(iii). Second, "Larry Adams" and "J. Leigh" marked the "Agent" boxes in the receipts evidencing their presumptive agency status. Although "Sherry Bley" did not mark either the "Agent" or "Addressee" boxes on the return receipts, the return receipts, Postal Service Form 3811, indicate that the letter carrier may only deliver the certified mail to either the "Addressee" or an "Agent." *Cf. Academy of IRM v. LVI Envt'l. Servs., Inc.,* 344 Md. 434, 687 A.2d 669, 675 (1997) (certified mail restricted delivery requires letter carrier to obtain signature of addressee or

agent and "[s]imply because delivery was made to a person other than the officer identified on the receipt or in the summons does not mean that service was invalid and personal jurisdiction was lacking"). Where, as here, the signator is not the "Addressee," it is reasonable to presume that the signator must be an "Agent." A contrary rule "could result in much uncertainty and potentially allow great mischief." *Dunn*, 566 S.E.2d at 308. Third, although Goliath and Satterfield contend Monster and Rossco must prove the signators were authorized to accept service of process, we have recognized that "the burden of proof ordinarily rests on the party who possesses the facts on the issue in dispute." *Reisenauer v. Schaefer*, 515 N.W.2d 152, 156 (N.D.1994) (quoting *In re Mt. Pleasant Bank & Trust Co.*, 455 N.W.2d 680, 685 (Iowa 1990)). It imposes no great burden on a defendant, who possesses knowledge of the relevant facts, to determine whether a particular individual was authorized to accept service of process on the defendant's behalf.

▮ [¶ 18] Fourth, and most important in the context of this case, Goliath and Satterfield had knowledge of both underlying collection actions, including the default judgment motions, and they have the burden of establishing sufficient grounds for disturbing the finality of the judgments under N.D.R.Civ.P. 60(b). *See, e.g., Shull*, 2009 ND 142, ¶ 14, 770 N.W.2d 274. We agree with the court's decision in *Sec. and Exch. Comm'n v. Internet Solutions for Bus. Inc.*:

> Although [the defendant] is correct that the plaintiff generally has the burden to establish jurisdiction, *see Forsythe v. Overmyer*, 576 F.2d 779, 781 (9th Cir.1978), we believe the better rule in this context is that a defendant moving to vacate a default judgment based on improper service of process, where

the defendant had actual notice of the original proceeding but delayed in bringing the motion until after entry of default judgment, bears the burden of proving that service did not occur. This rule has been adopted by the Second and Seventh Circuits and a number of district courts. *See Burda Media, Inc. [v. Viertel],* 417 F.3d [292,] 299 [ (2d Cir.2005) ]; *Jones [v. Jones,]* 217 F.2d [239,] 242 [ (7th Cir.1954) ] ("The burden was upon the defendant to show that the judgment was void for lack of service....."); *Moss v. Indus. Leasing Corp.*, No. CV–93–136–CI, 2005 WL 3050277, at *2 (E.D.Wash. Nov. 15, 2005); *see also Bally Export Corp. [v. Balicar, Ltd.],* 804 F.2d 398, 401 [ (7th Cir.1986) ]; *Theresa L. Kruk, Annotation, Who Has Burden of Proof in Proceeding Under Rule 60(b)(4) of Federal Rules of Civil Procedure To Have Default Judgment Set Aside on Ground that it Is Void for Lack of Jurisdiction,* 102 A.L.R. Fed. 811 (1991).

> This rule is consistent with other cases which have held that the defendant moving to have a default judgment set aside under Rule 60(b) has the burden of proving that he is entitled to relief. *See Cassidy v. Tenorio*, 856 F.2d 1412, 1415 (9th Cir.1988) (citing *Atchison, Topeka, & Santa Fe Ry. Co. v. Barrett*, 246 F.2d 846, 849 (9th Cir. 1957)). The rule also comports with general principles of fairness. A defendant who has notice of an action against him may force the plaintiff to prove that service has been made and that jurisdiction is proper by filing a Rule 12(b) motion to dismiss. *See Rohm & Haas Co. v. Aries*, 103 F.R.D. 541, 544 (S.D.N.Y.1984). The defendant who chooses not to put the plaintiff to its proof, but instead allows default judgment to be entered and waits, for whatever reason, until a later time to chal-

lenge the plaintiff's action, should have to bear the consequences of such delay.

Having clarified that the defendant moving to vacate default judgment for improper service of process bears the burden to prove that he is entitled to relief, we turn to whether that burden has been met here. [The defendant's] burden is a substantial one. "A signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.'" *O'Brien [v. R.J. O'Brien & Assocs., Inc.],* 998 F.2d [1394,] 1398 [(7th Cir.1993)] (quoting *Hicklin [v. Edwards,* 226 F.2d 410], 414 [(8th Cir. 1955)].) It is clear from the record that Shaw cannot prove that he was not served with process as he claims.

509 F.3d 1161, 1165–66 (9th Cir.2007) (footnote omitted).

[¶ 19] The signed return receipts for certified mail in this case raised a rebuttable presumption of valid service of process. Monster and Rossco presented a prima facie case of valid service, and it became Goliath and Satterfield's burden to present facts and documentation to establish service of process was insufficient. *See Dakota Bank and Trust Co. v. Federal Land Bank,* 453 N.W.2d 610, 612 (N.D.1990); *Stedman,* 449 N.W.2d at 565; *Obrigewitch,* 443 N.W.2d at 924. Goliath and Satterfield not only failed to present any evidence to support, but have not even claimed that the signators were unauthorized to accept service on their behalf or that service did not result in delivery to them.

[¶ 20] We conclude the district court did not err in ruling service of process was sufficient and the court had personal jurisdiction over the defendants in the underlying collection actions.

**B**

[¶ 21] Satterfield argues the district court erred in refusing to grant him relief from the default judgments because piercing the corporate veil requires "proof" before he could be found personally liable for the judgments.

[¶ 22] Under N.D.R.Civ.P. 55, "in all cases other than those in which a sum certain is sought, some form of proof must be submitted to establish liability as well as damages." *Thompson v. Goetz,* 455 N.W.2d 580, 584 (N.D.1990); *see also Hoops v. Selid,* 379 N.W.2d 270, 272 (N.D. 1985). Although a member or owner of a limited liability company generally is not liable for the company's debts, a member or owner will be personally responsible if the conditions and circumstances under which the corporate veil of a corporation may be pierced are present. *See Bakke v. D & A Landscaping Co., LLC,* 2012 ND 170, ¶ 9, 820 N.W.2d 357; N.D.C.C. § 10–32.1–26(1) and (3). "A request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself." *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.,* 185 F.3d 978, 985 (9th Cir.1999).

[¶ 23] In *Coughlin Constr. Co., Inc. v. Nu–Tec Indus., Inc.,* 2008 ND 163, ¶ 20, 755 N.W.2d 867, we set forth factors to be considered in determining whether the corporate veil should be pierced:

[F]actors considered significant in determining whether or not to disregard the corporate entity include: insufficient capitalization for the purposes of the corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of the debtor corporation at the time of the transaction in question, siphoning of funds by the dominant shareholder, nonfunction-

ing of other officers and directors, absence of corporate records, and the existence of the corporation as merely a facade for individual dealings.

(quoting *Hilzendager v. Skwarok,* 335 N.W.2d 768, 774 (N.D.1983)). "[A]n element of injustice, inequity or fundamental unfairness must be present before a court may properly pierce the corporate veil." *Jablonsky v. Klemm,* 377 N.W.2d 560, 564 (N.D.1985). Not all factors need be established to pierce the corporate veil, *see Axtmann v. Chillemi,* 2007 ND 179, ¶¶ 16–24, 740 N.W.2d 838 (three factors sufficient), and the "element of unfairness may be established by the showing of a number of the requisite factors." *Id.* at ¶ 13.

[¶ 24] It is not uncommon for courts to enter a default judgment and pierce the corporate veil simultaneously. This Court in *Jarick Products, Inc. v. MID AM Group, LLC,* 2010 ND 48, ¶ 1, 789 N.W.2d 282 (Table), summarily affirmed an order denying a motion to vacate a default judgment where the appellant argued the district court erred "because the default judgment pierced the corporate veil of his limited liability corporation." Numerous courts have pierced the corporate veil in default judgment actions based on sufficient allegations contained in the complaint. *See, e.g., Badian v. Elliott,* 165 Fed.Appx. 886, 889–90 (2nd Cir.2006); *Functional Prods. Trading, S.A. v. JITC, LLC,* 2014 WL 3749213, at **2–3 (N.D.Ga., July 29, 2014); *Kulwa v. Obiakor OB/GYN P.C.,* 2013 WL 504383, at *6 (E.D.N.Y. Feb. 8, 2013); *Federal Deposit Ins. Corp. v. Quest, F.S., Inc.,* 2011 WL 2560428, at *3 n. 3 (C.D.Cal., June 27 2011); *McDuffie v. TKB Holding Grp., LLC,* 2010 WL 4338387, at *4 (E.D.N.C., Oct. 26, 2010); *Viera v. Chehaiber,* 2010 WL 960347, at *3 (C.D.Cal., March 16, 2010); *In re Clearview Builders Inc.,* 405 B.R. 144, 147 (M.D.Pa.2009); *Wagner v. Rugged Enters., LLC,* 2012 WL 6218467, 979 N.E.2d 1072

(Table) (Ind.Ct.App., Dec. 13, 2012); *H.G. Hill Realty Co., L.L.C. v. Re/Max Carriage House, Inc.,* 428 S.W.3d 23, 34 (Tenn.Ct.App.2013); *Dodd v. Savino,* 426 S.W.3d 275, 290–93 (Tex.Ct.App.2014); *Better Foods Land Inv. Co. v. Bowler,* 2010 WL 780003, at *2 (Wash.Ct.App. 2010).

[¶ 25] In the default judgment actions, Monster and Rossco submitted affidavits of proof in which the affiants stated under oath that "I have personal knowledge of the facts" stated in the complaint and that "I believe them to be true." The complaints alleged:

> At all relevant times, George Satterfield was President of Goliath Energy Services, LLC. At all relevant times, Karl Troestler was Chief Financial Officer of Goliath Energy Services, LLC. On information and belief at the time Goliath Energy Services, LLC contracted with Rossco [and Monster], the directors commingled corporation funds, failed to follow corporation formalities and was undercapitalized. As such, under the theory of alter ego and piercing the corporate veil, Satterfield and Troestler are individually and personally liable for the debts of Goliath Energy Services, LLC.

[¶ 26] The complaints allege relevant factors for piercing the corporate veil and placed the defendants on notice that Monster and Rossco were seeking to pierce the corporate veil and hold Satterfield and Troestler personally liable. We conclude the allegations in the complaints, sworn to by the plaintiffs and unchallenged by Satterfield, are sufficient to provide the basis for piercing the corporate veil in the default judgment proceedings.

[¶ 27] When a defaulting party has a meritorious defense and timely seeks relief, doubt, if any, should be resolved in

favor of the motion to set aside the judgment. *See, e.g., State v. $33,000.00 U.S. Currency,* 2008 ND· 96, ¶17, 748 N.W.2d 420. ·Goliath and Satterfield did not file proposed answers on the merits and they have not suggested in their brief that they have any defense to the collection actions or to the requests to pierce the corporate veil. We conclude the district court did not abuse its discretion in denying the motions for relief from the default judgments.

## III

[¶ 28] We have considered the other arguments raised and find them to be unnecessary to the decision or without merit. The orders are affirmed.

[¶ 29] DALE V. SANDSTROM, Acting C.J. and MICHAEL G. STURDEVANT, S.J., concur.

We concur in the result, DANIEL J. CROTHERS, and JAMES D. HOVEY, D.J.

[¶ 30] The Honorable MICHAEL G. STURDEVANT, S.J., and The Honorable JAMES D. HOVEY, D.J., sitting in place of VANDE WALLE, C.J., and KAPSNER, J., disqualified.